### STATE EX REL. *v.* WHARTON.

[61 South. 2.]

1. MUNICIPAL CORPORATIONS. *Officers. Qualifications after election.*

> The general laws touching the qualifications of public officers have no application to the officers of municipalities operating under specail legislative charters, the municipal charter controlling in such case.

2. SAME.

> In such case where there is no provision of the charter whereby a failure to qualify on or before the day named for so doing forfeits and vacates the office, the law which merely fixes the time for the elected officer to qualify will be deemed directory.

3. SAME.

> Under the charter of a municipality providing in regard to vacancies that "should a vacancy occur at any time, or should an officer elect fail to qualify the board may order a special election to fill said vacancy. In case of any vacancy in any municipal office to which the officer is elected or appointed by the board of mayor and aldermen at any regular or special meeting," the failure of an officer to qualify within the prescribed time may be waived by the

city and an approval of a bond after the expiration of the time limit is a waiver.

4. SAME.

In such case the action of the board of mayor and aldermen in qualifying an officer after the expiration of the time limit was tantamount to filling a vacancy as provided by the charter.

STATE EX REL  DISTRICT ATTORNEY *v*. CHARLES R. WHARTON.

APPEAL from the circuit court of Claiborne county.

HON. H. C. MOUNGER, Judge.

*Quo warranto* by the state on the relation of the district attorney against Charles R. Wharton.   From a judgment dismissing the case, the state appeals.

The facts are fully stated in the opinion of the court.

*J. McC. Martin,* attorney for appellant.

1st.   (a)  An alderman under the charter of the town of Port Gibson must qualify by taking the oath of office, written out and subscribed by him, which oath must be filed and safely kept among the records of the office of the clerk.   (b)  An alderman must give bond, in the same manner as members of board of supervisors.   2nd.   They must so qualify before the first Monday in January, succeeding their election—in this case the 2nd day of January 1911.   3rd.   They must take the oath of office provided in section 5 of said town charter, before entering on duties of office.   4th.   They must make their bonds, have them approved by the president of the board of supervisors and clerk of the chancery court, file them in the office of the said clerk and have them recorded in said office.   See sections of Code 1906 above cited.   And all this must be done before they enter upon duties of office. That is before the first Monday in January, 1911.   See pages 1, sec. 2 (c), page 2, sec. 2 (e), and sec. 5 (a), page 7, Charter of said town.   5th.   Failing to qualify, on or before, under act 1908 and failing to qualify as above, before the 2nd day of January, 1911, under the said char-

ter, their offices become vacant, the board of mayor and aldermen may order a special election to fill said vacancy. See Charter, page 16, sec. 22.

"Persons elected to office take the office subject to such conditions as the legislature imposes, etc." *Hide* v. *State,* 52 Miss. 674. The execution of the bond, being a condition precedent to entering upon or retaining the office, the inference at once arises that he either refrained from giving same because of inability, or because he preferred surrendering the position. *Ibidem,* 676.

The failure or refusal of the officer to give the bond within time required by law, *ipso facto* vacates the office. This case reviews the two Alabama cases of *Sprowl* v. *Lawrence,* 33 Ala. 674, *Bebee* v. *Robinson,* 52 Ala. 69, and *State* v. *Mathews,* 57 Miss. 1; also *State* v. *Muir,* 20 Mo. 303, *State* v. *Cooper,* 53 Miss. 615; this last rendered by Judge Simrall, and repudiates the conclusion reached by him, as to matter *ipso facto.* *Bennett* v. *State,* 58 Miss. 562-563.

The law required that one desiring to enter upon the office to which elected shall, as a condition precedent, execute and have approved by certain officials designated, an official bond for each office. The tender of a good bond, if rejected by the approving officer, cannot be held to be a compliance with the statutory condition. Nothing short of what the law requires is sufficient. *Andrew* v. *Covington,* 69 Miss. 746-747.

A municipal officer is a public officer within the meaning of Code 1892, section 3540, providing for trial in vacation, by *quo warranto,* involves right of public office. *Kelley* v. *Kierskey,* 79 Miss. 168.

"A trusteeship of a public school is a public office." *Ellis* v. *Greaves,* 82 Miss. 36.

In the case of *Roan* v. *Mathews,* 75 Miss. 94, the court held: That payment of taxes after time required by law does not remove disqualification of voter or elector; and that payment is antecedent to right.

Hence, taking oath and subscribing same to be filed and safely kept by clerk of board of mayor and aldermen, and giving bond, as required by law, before entering on duties of office, approved by president of board of supervisors, filed with clerk of the chancery court for record of same are antecedent acts. Doing so afterwards does not cure.

In the first place we have the case of the officer who has failed to take the oath or file the bond within the time required, but does so afterwards. Under these conditions the courts usually decide that there is a vacancy, even where there is no judicial determination to that effect; and, if the authority having the power to fill a vacancy acts, they regard such appointment as the incumbent of the office.'' 29 Cyc. of Law & Procedure, 1388. *State* v. *Tucker,* 54 Ala. 205; *State* v. *Johnson,* 100 Ind. 489; *State* v. *Lansing,* 35 L. R. A. 124; *contra State* v. *Churchhill,* 41 Mo., note 46, to *State* v. *Lansing* above cited.

A vacancy in office for any of the causes enumerated by the statute occurs usually at the time of the happening of the event, the occurrence of which is by the statute the cause of the vacancy; and no judicial determination that a vacancy has occurred is necessary. 29 Cyc. of Law & Procedure, page 1301; *State* v. *Jones,* 81 Am. Dec. 403; compare 3 Am. St. Rep. 663; *Oliver* v. *Jersey City,* 48 L. R. A. 412; *People* v. *Brooklyn,* 33 Am. Rep. 659.

Thomas Mansfield was legally chosen poundkeeper of Bangor. He took the oath prescribed June 6, 1853 and furnished a bond, which was not approved until 9th of August, 1853. Between said dates he impounded thirteen swine. Suit followed. Court held he could not act as poundkeeper until his bond had been approved. *Rounds* v. *Mafield,* 38 Mo. 586.

When a public officer is required to give a bond, which is to be approved before he can act, he cannot justify as an officer *de jure* until the statutory bond has been filed and approved. It is not enough that he has been chosen.

He may have taken the oath which the statute prescribed, yet he may never be able to furnish the requisite bond. He is not an officer by the mere fact of his choice. This has been uniformly held to be the law, as well in regard to a public officer as those holding private trusts under the provisions of our public statutes. Where suit is brought against individuals, who justify as public officers, they must show themselves officers *de jure* and that they were qualified by taking the oath required by law. A record that they were sworn is insufficient. *Rounds* v. *City of Bangor,* 74 Am. Dec. 470.

The action in the last cited case was brought under the provisions of Statute 1853, chap. 17, sec. 4, re-enacted substantially in the Revised Statutes of 1857, chap. 63, sec. 6, which is in these words: ''Each city or town shall be responsible in damages to the party injured for all illegal doings or defaults of its poundkeeper, in an appropriate action to recover such damages; and such poundkeeper shall give a bond with sufficient surety or sureties, to be approved by the alderman or selectmen for the faithful performance of the duties of his office, before he shall be entitled to act as such poundkeeper.'' *Rounds* v. *City of Bangor, Ibidem,* pp. 470 and 471.

Where term of office of county treasurer is by statute limited to two years, and until his successor is qualified and elected, in the event of re-election of such treasurer, and his failure to give a new bond, the office becomes vacant, and he holds office as treasurer *de facto* only. Such vacancy should be filled by appointment of the county judge. *County of Wapello* v. *Bingham,* 74 Am. Dec. 371.

The defense made by appellees in lower court was first. That L. A. Smith, mayor of the town of Port Gibson, on the night of the 2nd day of January, A. D. 1911, administered to them, all three in a group, the oath of office provided by section 5 (a) of the charter; that he did so orally; that none of them before then took and subscribed such oath, and filed it with clerk and board of aldermen,

as provided by charter, sec. 5, p. 7 (b). 2nd. That the
failure to give and have approved their bonds would not
work to vacate their respective offices, because they were
substantially given; and because it had never been the
custom to have same approved by president of board
of supervisors and clerk of chancery court, filed and re-
corded, as required by sec. 2, p. 2 of charter (e) and by
sections 3465, 3466 and 3467 of Code of 1906. They each
and all admit that: 1st. They did not take and sub-
scribe the oath required and file same with clerk of board
of mayor and aldermen. 2nd. That they did not undertake
to execute bonds until after the 2nd day of January, A. D.
1911; that the bonds actually given, copies of which ap-
pear in Abstract, pp. 1 and 2, were never approved by the
president of board of supervisors and by the clerk of
chancery court, nor filed for record, nor recorded.

Walne was elected an alderman on the 10th day of
March, 1908. Appellees offered in evidence a bond, etc.,
purporting to have been given by him, for such office, be-
ginning, the paper, purporting to be bond, does not state
when.

Jones was elected September 5, 1910, or rather was ap-
pointed by the mayor on that day for the term running
four months.

The said two papers were offered by appellees to show
that they were entitled to hold over, until their successors
were elected and qualified, under the said election, as to
Walne and appointment as to Jones. The same, also, as to
Wharton. His so-called bond, etc., could not be found.

As to said papers, Jones was not elected as required
by section 22 of the said charter, but appointed by the
mayor, said appointment being confirmed by the board in
session. He took no oath of office at all; and neither his
bond nor the bonds of Walne and Wharton were ever ap-
proved or filed. Besides neither took the oath as re-
quired by charter, as said exhibits will and do show.
Again the Act of 1908, p. 199, was then in full force and

they could not hold over, even if they could as their own successors or under the general law.

Exhibits B., E., and I. to Rea's testimony were the papers sought to be offered by them respectively, when trying to qualify as member of the board of mayor and aldermen for term beginning January 2, 1911, and running four years from that date. As will be seen from these and from the abstract of appellant, none of them took and subscribed the oath of office as required by law, none gave bond, approved, filed and recorded as provided by law; and even the attempt to do so was after the first Monday in January, A. D. 1911. Hence none of them have titles to the offices now attempted to be used by them but all are intruders therein, respectively.

*C. A. French,* attorney for appellant.

A charter is to a town or city what the Constitution is to a state, that is, it is the organic law, and therefore must be construed according to the letter.

Section 2 of said charter provides that the mayor and aldermen shall qualify at any time before the first Monday succeeding their election, and shall enter upon the discharge of their duties on the first Monday in January succeeding their election.

Therefore it follows that they must qualify on or before the first Monday in January after their election, and not after, and if they fail or refuse to do so, then the office becomes vacant, *ipso facto.*

What do we understand by the word qualify? I take it that it means to make bond, according to law, and take and subscribe to the oath of office, as prescribed by section 5 of said charter, and section 268 of the Constitution of the state of Mississippi—not section 155 of the state Constitution, as has been said by the three defendants in these cases.

The whole record shows without doubt that not one of the defendants qualified according to law at any time be-

fore the first Monday in January, 1911, but all of them undertook to qualify in some way after the first Monday in January, 1911, and did enter upon the discharge of the duties of the offices on the first Monday in January, 1911, and according to our contention thereby usurped the offices.

Chapter 190, page 199 of the Acts of 1908, provides that a failure of any person elected to an office to qualify as required by law on or before the day of the commencement of his term of office, that a vacancy shall thereby be created in such office, and the same shall be filled in the manner provided by law. It therefore follows that, as the defendants did not qualify on or before the first Monday in January, 1911, that the three officers of aldermen thereby became vacant, and it was the duty of the remaining three aldermen and the mayor, who then constituted a quorum, to have called an election to fill the vacant offices.

The record shows that Chas. R. Wharton did not file his bond and undertake to qualify until the 3rd day of January, 1911, and John M. Jones filed his bond and undertook to qualify on the 4th day of January, 1911, and Geo. T. Walne filed his bond and undertook to qualify on the 6th day of February, 1911. The term of office of all of these men commenced on the first Monday in January, 1911, which was the second day of the month.

Paragraph (c), sec. 2 of the charter of said town provides that, "The candidates elected at such election shall qualify at any time before the first Monday in January succeeding the same; and shall enter upon their official duties on the first Monday in January aforesaid."

Now the above paragraph must mean something, and we can only conclude that it means what it says, and in applying the Act of the legislature of 1908, page 199, which provides that a person who is elected to an office, and fails to qualify by or before the first Monday in January after his election, as in this case, thereby forfeits

the office, and a vacancy is thereby created in the office. Therefore we contend that when these three gentlemen entered upon the discharge of the duties of the office of alderman, without qualifying as the law directs, and in the manner provided by law, that they were nothing more nor less than usurpers, and that the circuit court should have so declared them, and have declared the offices vacant, on the trial of these cases.

It is contended by the defendants in these cases, that as they were re-elected to succeed themselves that then it was not necessary for them to qualify on or before the first Monday in January, 1911, and that they could rightfully hold over and it made no difference whether they qualified or not.

Now the charter does not provide for an officer holding over after the expiration of his term of office, and does provide that the mayor and aldermen shall be elected for a specified term of office, and it therefore follows, that if for any reason no one is elected to succeed any mayor or aldermen, that at the expiration of his term of office, a vacancy shall thereby exist. Officers elected to serve under the charter of the said town, derive all of their powers from said charter, and have no powers except such as the charter confers on them, and where there is no provision in the charter providing that they shall hold over until their successors are elected and qualified, then their duties terminate with the expiration of the term for which they were elected, and if they undertake to hold over they are nothing more than usurpers and should be ousted by *quo warranto* proceedings.

The act of the Legislature above cited, Acts 1908, page 199, prohibits any officer holding over, with certain exceptions, but the office of Alderman of Port Gibson, does not come under the exceptions. The next question is, how shall the aldermen of the said town qualify? Section 2, paragraph (e) provides that the mayor shall qualify in the same manner provided by law for justice of the peace,

and that the aldermen shall qualify in the same manner provided by law for members of the board of supervisors.

How shall the members of the board of supervisors qualify? Section 293 of the Code of 1906 provides what the amount of their bond shall be and its effect. Section 3465 of the Code provides who shall approve the bonds of members of the board of supervisors, and that such bonds shall be approved by the president of the said board of supervisors, and that such bonds shall be approved by the president of the said board of supervisors, and the clerk of the chancery court, and that all such bonds shall be recorded in the office of the clerk of the chancery court (not deposited in the Port Gibson Bank).

The record shows without doubt that these gentlemen did not so qualify.

It is contended by the defendants that section 2, paragraph (c), does not mean that the said aldermen shall qualify as it provided by law for members of the board of supervisors. If it does not mean what it says, and that is certainly what it says, then I ask the court to interpret what it does mean. In my humble opinion it does say that, and if it does not mean what it says it is a dead letter, and we have no charter provision as to how the aldermen shall qualify.

Section 22, paragraph (a) of the said charter provides, that "should a vacancy occur at any time, or should an officer elect fail to qualify, the board may order a special election to fill such vacancy." The question then arises, as to how long after an alderman has failed to qualify, as provided by law, shall the board of aldermen wait before ordering an election to fill the vacancy. Can the said board of aldermen ignore the law and the charter, and allow members elect who have failed to qualify to retain their seats and serve as aldermen?

It was the duty of the mayor and the three aldermen who were then on the board of aldermen, when the defendants herein failed to qualify, to declare the offices va-

cant, and order an election to fill the vacancies. Wharton failed for one day, Jones for two days and Walne for one month and four days, the first Monday was on the second of the month. The law just says "fail" but does not say for how long, a failure is a failure, and one day is as much failure as a month, or six months, or one year. That is the case with county and state officers, and why should not the aldermen of Port Gibson be held to the same strict observance of the law as the county and state officers?

The board of mayor and aldermen knew of this failure, but the people were not supposed to know of it; they had a right to think that the board of mayor and aldermen knew their duties and were performing them. When the people found that the board of mayor and aldermen were not performing their duties and had failed to perform their duties in regard to the qualifications of their members, then these *quo warranto* proceedings were begun.

The very first requisite toward the qualification of these defendants as aldermen of the town of Port Gibson, was that they should "take and subscribe" to the oath of office as prescribed by section 268 of the state Constitution.

Section 3461, Code 1906, provides that the oath of office, of all officers whose duties are confined within the limits of the county in which they were elected shall be filed in the office of the clerk of the chancery court of the county. The oath of office of these defendants, if they ever took and subscribed any, was not filed in the office of the chancery clerk of the chancery court, of the county of Claiborne, the county in which the town of Port Gibson was and is situated.

Section 5 (a) of the charter has the same oath of office for its officers to "take and subscribe" as the one prescribed by the state Constitution. The defendants did not take and subscribe either of these oaths, and therefore did not qualify according to law, and are now, and were at the time these suits were filed just simply usurpers of the offices.

The defendants did undertake to qualify by taking the oath prescribed by the state Constitution, section 155 which is prescribed for judges to take and subscribe, but that is not what the law directs for them to do, and so far as the good that it will do them, they might as well have taken the oath prescribed by law for witnesses to take when they are about to testify in court, nothing short of what the law says will answer the purpose.

Besides all of this, neither the oath that they did take, nor the bonds they did make, were ever filed in the office of the clerk of the chancery court. The bonds were not recorded, and therefore the law and the charter have not been complied with, and the defendants have no right to hold the offices.

The idea of the law seems to be that no officer shall have the right to approve his own bond. Sections 3447 and 3465 of the Code of 1906. When the board of mayor and aldermen of Port Gibson undertook to approve the bonds of the defendants, they violated the law, and undertook to approve their own bonds, for the newly elected members of the board, who are the defendants here, were a part of that board, and therefore were undertaking to approve their own bonds.

Ordinance No. 26 was introduced by the defendants, over the objection of the plaintiff, for the purpose of showing that the board of mayor and aldermen, had the power to approve the bonds of the aldermen, and in so far as that is concerned, the ordinance is void, for it is in direct contradiction of the law, and is therefore unconstitutional. The charter empowers the board of mayor and aldermen to approve the bonds of all of the officers of the said town who are elected or appointed by said board (Sec. 4, paragraph (d) of the charter), and this is what the said ordinance refers to. But the said charter nowhere gives the board of mayor and aldermen the right to approve their own bonds, and this a very wise and salutary provision, for otherwise the board of

mayor and aldermen might approve worthless bonds, by entering into collusion with each other for that purpose.

Under the charter, as it is written, no one but the president of the board of supervisors of the county of Claiborne, and the clerk of the chancery court could approve the bonds of the defendants, provided there were, at the time the bonds should be approved, such officers. The failure of the three defendants to qualify by taking and subscribing the oath of office as prescribed by the charter, section 5 (a) and section 268 of the state Constitution on or before the first Monday in January, 1911, rendered them ineligible to the office. This is certainly the law as it is written.

The defendants cannot be heard to say that they complied with the law afterwards by doing that which the law required them to do before, or on the first Monday in January, 1911, because they have not done it at all, but simply say we were elected to the offices and intend to hold onto them until ousted by law.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

I submit that on the facts in the record and on the law of the state, that the trial judge erred in his rulings and the proof shows conclusively that said persons did not qualify as required by law.

It is expressly provided in section 3459 of the Code of 1906, that if any person elected to any office shall fail to qualify as required by law, on or before the day of the commencement of his term of office, a vacancy in such office shall occur thereby, and it shall be filled in the manner prescribed by law for filling vacancies in such offices, unless the failure to qualify arise from there being no officer to approve the bond of such officer-elect, and except the governor-elect, when the legislature fixes by resolution the time of his installation.

This section was so amended in 1908 as to make it impossible for an officer to hold over for a full term as his successor.

It is clear that all the officers involved in this proceeding wholly failed to comply with the statute on the first Monday in January succeeding the election, and that is the expressed provision of the law provided in section 3458 of the Code.

Under the terms of the statute, section 3459, such officer-elect may file his bond and qualify before the day for his term to begin, and it is expressly stipulated that if he fails to qualify as required by law, on or before the first Monday in January, that the office shall become vacant.

It is perfectly apparent, therefore, on the facts in this record that the appellee had absolutely no right to qualify after that date any more than any other citizen of the town of Port Gibson who was a qualified elector. Suppose that on Tuesday following the first Monday in January, 1911, some qualified elector had gone into the mayor's office with an officer qualified to administer oaths, and took the oath of office and filed a bond conditioned according to law, even at the proper place, could such person have entered upon the discharge of the duties of such office, and would the court have hesitated one moment to have ousted him from office on information in *quo warranto* by the district attorney?

Section 3461 provides in the concluding paragraph that the oath of office of all officers whose duties are confined within the limits of the county in which they are elected, shall be filed in the office of the clerk of the chancery court of the county. I take it that this is an amendatory statute; that there is a sound public policy and reason for having some particular place where the bonds of the officers may be found; where copies may be obtained in case it should become necessary to enter suit upon the bond, and for various other reasons; the public certainly has a

right to know where it may go to find the official bonds in case it has occasion for such information as an inspection of the bond would disclose. It appears from the testimony in these cases that the bonds were locked up in the bank at Port Gibson, and that no other person could see a bond, or have access to it without an express order from the mayor of the town. There was no public record kept by the town, and, so far as the bonds were concerned, citizens were entirely in the dark as to their contents and conditions, and as to whether, as a matter of fact, any such bond actually existed.

An official who would wilfully disregard these salutary provisions of the law certainly should be ousted from exercising the functions of the office.

These statutes cannot be construed as directory statutes, but so far as an officer is concerned, he must strictly comply with them. It might be true that his failure to make the bond required by law and in the manner required by law could not be set up by him in defense of any obligation accruing on the bond, and while that is true and while as to persons thus situated, the bond would be a valid obligation and would be valid and binding, still that does not excuse the officer from complying with the law, and so far as his right to occupy office is concerned, the statutes must be literally complied with.

*Mayes & Mayes,* attorneys for appellees.

In their briefs the several counsel for the appellants emphasize various sections of the Code bearing on the subject of officers, etc., the applicability of which to the case in hand we deny.

The town of Port Gibson was operating under its own charter and we insist that such charter constitutes the full law of the case; and that the general legislation is not to be tacked on to help out in this claim of forfeiture. That claim must be determined by the charter alone. That the charter of Port Gibson does constitute the law of the

case is well settled. 28 Cyc. 153; *Yazoo City* v. *Lightcap*, 82 Miss. 148.

Indeed, in his brief on page 6 Mr. French, of counsel for the appellants, says this: "A charter is to a town or a city, just what a constitution is to a state, that is, it is the organic law, and therefore must be construed according to the letter."

Let us consider this charter.

What counsel for the appellants themselves declare to be the controlling provision of the charter, is found in section 2 (c), viz: "The candidates elected at such election shall qualify at any time before the first Monday in January succeeding the same, and shall enter upon their official duties on the first Monday in January, aforesaid," etc.

Counsel claim that this provision means (it certainly does not say so) that they "must qualify on or before the first Monday in January after their election, and not after, and if they fail or refuse to do so, then the office becomes vacant, *ipso facto.*" In this proposition counsel completely abandons, in effect, the claim that the charter "must be construed according to the letter;" for the letter is simply a declaration that the successful candidate, although elected on the first Monday in December, "shall qualify at any time before the first Monday in January." In other words, it is a provision giving the person elected a right on any day, at any time, during the whole month of December, to go before the outgoing boards and call upon them to perform the duties to pass on his bond, swearing him in, etc. The letter does not provide that he shall qualify "on or before" the first Monday in January; or that failing to do so, the "office becomes vacant, *ipso facto.*"

Does the charter mean that? This is the real question in this case. We come directly to the question: Is the provision that the candidate elected shall qualify at any time before the first Monday in January, merely

directory, or is it mandatory? In the former event, then a failure to qualify is merely a cause of forfeiture, which may be waived and may be and is cured, if such qualification is afterward before proceeding taken; in the latter' case, *ipso facto.*

It will be observed that this municipal charter contains no provision whatever that, on failure to qualify on or before the day named, the office shall be thereby or thereupon forfeited. And in the light of the authorities, this makes all the difference. In 23 Am. & Eng. Ency. Law, pp. 357 and 358, under the title "Public Officers," the law is thus stated:

"Effect of Failure to Qualify within Prescribed Time.—Statutes prescribing the time within which an official oath shall be taken, or a bond given or filed, are generally held to be directory only, and a failure to comply therewith does not *ipso facto* forfeit the office, and if the officer, subsequently and before the commencement of proceedings to forfeit the office, complies with the requirements of the statute, he is entitled to the office. Such omission at the utmost merely affords a ground for forfeiture in direct proceedings therefor."

"Where Statute Declares a Vacancy.—In some instances the statutes prescribing the time within which the officer must qualify also provide that the office shall be deemed or become vacant on the refusal, failure, or neglect of the officer to give his bond or take the oath within the time prescribed. And if the officer qualifies before proceedings are commenced to oust him from the office, though after the expiration of the prescribed time, he will be held to be entitled to the office. The failure to qualify is, in such jurisdiction, regarded merely as a ground for forfeiture which may be waived. The tendency of the decisions in those jurisdictions holding such statutes directory is to restrict the officer's right to qualify after the expiration of the prescribed time was due to some good reason beyond his control." See also *Com-*

*missioners* v. *Johnson,* 19 Am. St. Rep. 88, and note; *State* v. *Ruff,* 16 L. R. A. 140, and note; *Brunot* v. *McKee,* 6 Watts & S. (Pa.) 513.

It will be observed that the first paragraph quoted above from 23 Am. & Eng. Ency. relates to statutes which, like this charter, do not declare that the failure to qualify the day named shall *ipso facto* vacate the office, while the two last paragraphs quoted relate to such statutes as do so declare in terms; and even as to this class of statutes the declaration is, in some states, held to be directory only, and the omission curable by the later qualification. It is in respect to this latter class of statutes that the difference of opinion exists. Mississippi, it seems, has held that such a provision is mandatory and vacates the office finally; (although Judge SIMRALL in a *dictum* in the *Cooper case,* 53 Miss. 515, expressed the other view). But it has also held (and that is the point here) that if the statute contains no such provision, then it is directory only. See the following cases: *Marshall* v. *Hamilton,* 41 Miss. 229; *State ex rel. Laiziar,* 77 Miss. 146. See also *Glavey* v. *United States,* 182 U. S. 595.

Counsel for the appellants in their briefs cite and rely on various Mississippi cases, claiming them to be opposed to the doctrine for which we contend. For instance, Mr. Martin, on page seven of his brief, relies on *Bennett* v. *State,* 58 Miss. 562, and says that it repudiates the conclusion reached by Judge SIMRALL in *State* v. *Cooper, supra.* But *Bennett* v. *State* accords with our contention for it arose under a statute which expressly declared a forfeiture; and it did not "repudiate" *State* v. *Cooper,* but said expressly that that decision "was not determined upon the question of the effect of the statute declaring the vacancy when the bond was not executed as the law requires." Neither the one case nor the other touches this question, i. e., where the statute contains no provision that the office shall be vacated by such omission.

In *Hyde* v. *State,* 52 Miss. 665, relied on by Mr. Martin, was an express provision in the statute for forfeiture.

*Andrews* v. *Covington,* 69 Miss. 740, is not in point. That suit was brought as a private suit under section 2687 of the Code of 1880; and the court only held that under the language of that section that sort of suit could not be maintained until first the relator had qualified—a position afterwards denied, in *State* v. *Laizer,* 77 Miss. *supra,* under other statutes.

The citation by Mr. Martin on page seven of his brief, from 29 Cyc. 1388, is incomplete. The whole paragraph should be read; and it is in accord with our claim. The writer is dealing with cases where the statute provides for vacancy. The paragraph begins thus:

"In many cases the statute provides that one who does not take the oath within the prescribed time vacates or forfeits the office. A similar provision is often made with regard to the official bond. The courts have taken different views with regard to the effect of such provisions, etc."

The charter is not wholly silent in respect to a failure to qualify, etc. It contains this provision:

"Section 22 (a)—Vacancies.—Should a vacancy occur at any time or should an officer-elect fail to qualify, the board may order a special election to fill said vacancy."

Here the board is given a power to order an election in case of failure to qualify. But the statute clearly means, in case of a definite failure, and not merely a trifling delay. But the matter is committed to the board as a directing body; and it can proceed as in case of a vacancy, or it can waive default. See *Chicago* v. *Gage,* 95 Ill. 593, 621.

Counsel for the appellants claim to have found the equivalent of a declaration of vacancy in the charter itself in two provisions: (a) In section 2, paragraph e, that "Before entering upon the discharge of their duties, the mayor and aldermen shall qualify," etc. (b) In section 5 (a), that "All the officers of said town shall, before entering upon the duties of their respective offices, take and subscribe the following oath," etc.

But plainly those directions are not the equivalent of a declaration of vacancy. The charter is carefully drawn and was repeatedly amended; and the case of failure by officers-elect to qualify, was provided for by section 22 (a) quoted above. There was an intelligent and sedulous abstinence from a declaration of vacancy in such case, but on the contrary a commitment of the whole matter to the discretion of the board, whether to proceed as in case of a vacancy or to waive the fault and avoid the cost and turmoil of a special election on a trifling occasion.

We do not challenge the power of the legislature to extend such statutes over municipalities having special legislative charters, of course; we make no question of power, but only of intention. And we contend that the legislature did intend to leave such municipalities as have elected not to come under the Code chapter, to live under their respective charters as those charters shall provide for—that is, of course, so far as the element of corporate life and organization and operation, are concerned.

It represents merely the common case where there is a special statute which includes and covers a special subject; and thereby the generality of the general statutes are, *quo ad hoc,* displaced and excluded. 36 Cyc. 1151.

This principle is illustrated by, and asserted in *Harrison* v. *Greaves,* 59 Miss. 453; *Easly* v. *Badenhausen,* 59 Miss. 580. In the former case, notwithstanding a broad declaration of section 136 of the Code of 1880, that "All elections by the people of this state shall be by ballot;" and that of section 137 that "All ballots shall be written or printed," etc., yet this court held section 137 not to apply to a municipal election "unless made applicable by its charter" (all municipalities then had legislative charters).

In the latter case the same holding was announced in respect to section 150 of the Code of 1880 which provides that "Any person desiring to contest the election," etc.

It is true that after these two decisions were made the Code of 1892 was adopted in which occurs section 3034,

which provided that "all the provisions of the law on
the subject of the state and county and county elections,
so far as applicable, shall govern municipal elections."
But this provision was in the new municipal chapter
which regulated the creation, etc., of municipalities by
general law. It had no relation whatever to those munici-
palities which retained their old charters; and it did not,
in the least, shake the authority as to them of the cases
cited above; and this fact is clearly recognized by this
court in *Shines* v. *Hamilton*, 87 Miss. 384, where the new
statute and its effect were explained. Observe the care-
ful language employed by the court, "at least so far as
relates to municipalities operating under the Code chap-
ter."

In *Yazoo City* v. *Lightcap*, 82 Miss. 148, *supra,* notice
how this court has emphasized and dwelt upon the fact,
that desirable as it might seem to be, theoretically, for all
municipalities to live under one law (and hence the gen-
eral chapter of the Code), that still the fact remained,
and it was undeniable, that it was not the legislative in-
tention to force such uniformity on the people if they did
not want it. And that is the point. Port Gibson did not
want it, and held onto her charter. And they are the law
of this case.

Section 3024 above (which is section 3439 of the Code
of 1906), it will be observed, is not of those sections
which, by section 3441, are made applicable to all munici-
palities—and consequently its provision has no relation
to such as held to their special charters.

The general statute, which is relied on by all the briefs
filed in behalf of the state, is chapter 190 of the Laws of
1908. This statute is based on, and enlarges the opera-
tion of section 3459 of the Code of 1906, which is nothing
but a rescript of section 3052 of the Code of 1892, and of
section 400 of the Code of 1880. It was in force when this
town's special charter was enacted, and amended more
than once; and the charter does not in any way refer to

it or incorporate it, or recognize it as part of the corporate scheme. It is not "made applicable by the charter," as Judge CAMPBELL expressed it in *Harrison* v. *Greaves,* 59 Miss. 453, *supra,* or by any of the several amendments thereto.

To put the whole case in a nutshell—the charter is the law of the case; its provisions are that an officer-elect shall qualify at any time after his election (even) before the first Monday in January, and that he shall qualify before entering on the discharge of its duties. That is far short of declaring a vacancy; it only means that he cannot act officially until he does qualify, even although his term shall have begun.

Argued orally by *J. McC. Martin* and *Geo. H. Ethridge,* Assistant Attorney-General, for the appellant, and *J. T. Drake* and *E. Mayes,* for appellees.

COOK, J., delivered the opinion of the court.

This case was begun upon the relation of the district attorney, by *quo warranto,* to oust appellee from the office of alderman of Port Gibson. The relief sought by the petition was denied, and the cause dismissed by the circuit court, and the state appeals to this court.

Appellee was elected in December, 1910, to the office of alderman. The town of Port Gibson was being conducted under a special charter, and was not operating under the general laws governing municipalities. The charter of the town provided that the elected officers of the town shall qualify at any time before the first Monday in January next succeeding the date of their election. It is contended that appellee did not qualify before the first Monday in January, nor on the first Monday. It appears from the evidence that appellee did file his bond, and was sworn in as alderman, not before the first Monday in January, as prescribed by the charter, but within a few days thereafter. It is also said that he did not take and

subscribe the oath required by the charter, nor was his bond approved by the president of the board of supervisors of the county and filed for record with the clerk of the chancery court, and from the evidence this appears to be true.

The state takes the position that a failure to qualify according to the requirements of the charter *ipso facto* forfeits and vacates the office, and that the general laws of the state are applicable in the present case.

Appellee contends that the charter of the town is the law of the case, and, inasmuch as the charter does not provide that a failure to qualify in the time and in the manner provided by the charter works a forfeiture of the office, this proceeding cannot be maintained. It is further contended by appellee that the charter commits to the board of mayor and aldermen the power and discretion to deal with vacancies. We have concluded that the charter of the town is controlling in this case, and that the general laws touching the qualifications of public officers has no application to the officers of municipalities operating under special legislative charters.

We find no provision of the charter whereby a failure to qualify on or before the day named for so doing forfeits and vacates the office. It seems to be settled by the authorities that unless the law, in terms, declares a forfeiture on failure to qualify within the prescribed time, the law, which merely fixes the time for the elected officer to qualify, will be deemed directory. The rule is thus stated in 23 Am. & Eng. Ency. of Law, p. 357: "Statutes prescribing the time within which an official oath shall be taken, or a bond given or filed, are generally held to be directory only, and a failure to comply therewith does not *ipso facto* forfeit the office, and, if the officer subsequently and before the commencement of proceedings to forfeit the office complies with the requirements of the statute, he is entitled to the office." The decisions of this court are in line with the decisions of other courts in holding simi-

lar laws directory. *Marshall* v. *Hamilton,* 41 Miss. 229;. *State ex rel.* v. *Lazier,* 77 Miss. 146, 25 South. 153.

Counsel for the state relies on *Andrews* v. *Covington,* 69 Miss. 740, 13 South. 853, to support the theory that our statutes are mandatory. The writer was of counsel in the trial of this case in the circuit court, and has some knowledge of the points upon which the case went off. The facts were that Covington, although elected by the people, was not a qualified elector; he having failed to pay all taxes legally assessed against him. He was not so qualified at the time he filed the petition, nor at the time the same was heard. What the court did really decide was that Covington was by the Constitution disqualified to hold the office to which he had been elected. He subsequently did pay up all taxes assessed against him, the board of supervisors called a special election to fill the vacancy, and Covington was re-elected and inducted into office, and held the office for four consecutive terms.

Section 22 of the charter is as follows: "(a) Vacancies. Should a vacancy occur at any time, or should an officer-elect fail to qualify, the board may order a special election to fill said vacancy. (b) In case any vacancy in any municipal office to which the officer is elected or appointed by the board of mayor and aldermen at any time, the same may be filled by the board of mayor and aldermen at any regular or special meeting." The charter being the law of the case, the intention of the lawmakers may be gathered from this section of the charter. It was, we think, the manifest intention of the legislature to give the board of mayor and aldermen discretion to deal with vacancies in office and failure of elected officers to qualify. It seems that a failure to qualify within the prescribed time may be waived by the city council, and an approval of a bond after the expiration of the time limit has been held to be a waiver. *Launtz* v. *People,* 113 Ill. 137, 55 Am. Rep. 405; *Chicago* v. *Gage,* 95 Ill. 621, 35 Am.

Rep. 182. The town of Port Gibson under the option provided by law elected to retain its charter, and to reject the general laws provided for the government of municipalities, and it was thus the charter became the law of this case. By a liberal construction of the charter provisions with reference to the filing of vacancies, the action of the board of mayor and aldermen in qualifying appellee after the expiration of the time limit was tantamount to filling a vacancy—at least the board elected to waive the time limit.

In this case a bond was filed and approved, and appellee did otherwise qualify as alderman, and discharged the duties and exercise the powers of an alderman for about sixteen months, when the state intervened to oust him upon the theory that the general laws of the state controlled. We think the trial court did not err in dismissing the cause.

*Affirmed.*