Syllabus.                                    Statement.

VICKSBURG AND MERIDIAN RAILROAD COMPANY *v.* ROBERT
LOWRY, GOVERNOR, ET AL.

MANDAMUS.  *Governor.*

The governor cannot be compelled by mandamus to perform any act.

APPEAL from the Circuit Court of Hinds County.

HON. T. J. WHARTON, Judge.

By the Act of Admission of March 1, 1817 (Code 1857, p. 22, § 5), the United States donated to the State to be formed five per cent. of the net proceeds of land lying within its territory, which should be sold after December 1, 1817, to be reserved for making public roads and canals. Three-fifths of the sum were to be applied to these objects within the State by the legislature, and two-fifths to the making of a road leading to the State under the direction of Congress. By the sixteenth section of the Act of Congress of Sept. 4, 1841 (Code 1857, p. 691), this two per cent. was relinquished to the State of Mississippi upon condition that the legislature should pass an act of acceptance embracing a provision to be unalterable without the consent of Congress, that the entire fund should be faithfully applied to the construction of a railroad leading from Brandon, Mississippi, to the eastern boundary of the State in the direction of specified cities in Alabama. By subsequent Federal legislation Jackson was made the commencement of the road which was to extend to the eastern boundary by way of Brandon. The Legislature of Mississippi accepted the grant, and by an act incorporating the Southern Railroad Company, which subsequently became the Vicksburg and Meridian Railroad Company, authorized the governor to receive the fund and deposit it in the State treasury subject to his requisition in carrying out the objects of the gift. On October 10, 1882, the appellant filed its petition alleging that sums to the credit of the two per cent. fund had been received by the governor and deposited with the treasurer of the State of Mississippi, and that both officers, affirming that the fund had been devoted by the legislature to common schools by an act of March 9, 1882 (Acts 1882, p. 78), refused to pay the money to the railroad company, which, inasmuch as the

governor declined to give an order on the treasury for the fund, asked for a writ of mandamus to compel the treasurer to pay over to the appellant all of the two per cent. fund whether credited to other purposes or not. The governor and treasurer answered, and the petition was heard and dismissed.

*Nugent & McWillie,* for the appellant, argued in writing the merits of the controversy.

*T. C. Catchings,* Attorney General, for the appellees, filed a brief also upon the merits.


CAMPBELL, C. J., delivered the opinion of the court.

The money alleged to be in the State treasury, and sought to be obtained by this proceeding, was required to be placed there subject to the requisition of the governor in carrying into effect the act applying the two per cent. fund, and can be drawn under said act only on the requisition of the governor. The court cannot direct the treasurer to pay without the requisition of the governor. The petition avers that the governor has refused to make such requisition, and it makes the governor and treasurer parties defendant and prays mandamus to the treasurer to compel him to pay the money. There is no prayer for mandamus to the governor. It is clear that the treasurer cannot pay without the requisition of the governor, and we might dispose of the case on the ground that a mandamus to the governor is not prayed by the petition; but as the governor is a party, and the appellant may bring his petition to compel the governor to make the requisition needed, and thus present the question of its right to a mandamus for that purpose, we meet it now.

Can a mandamus be issued to the governor in any case? It has been held by some courts that the governor may be compelled by mandamus to perform *ministerial* acts; but the overwhelming weight of authority is in favor of the denial of the writ against the governor in any case. In Arkansas, Georgia, Florida, Illinois, Louisiana, Maine, Michigan, Minnesota, Missouri, New Jersey, Rhode Island, Tennessee, and Texas, it is held that mandamus cannot be issued against the governor, and the decisions are supported by the most satisfactory reasons arising from the nature of our gov-

ernment, which consists of distinct departments which are independent and must be so maintained. *Hawkins* v. *Governor*, 1 Ark. 570; *Bisbee* v. *Drew*, *Gov.*, 17 Fla. 67; *Low* v. *Towns*, 8 Ga. 360; *People* v. *Bissell*, 19 Ill. 229; *People* v. *Yates*, 40 Ill. 126; *State* v. *Warmoth*, 22 La. Ann. 1; *In re Dennett*, 32 Maine 508; *Sutherland* v. *Governor*, 29 Mich. 320; *Rice* v. *Governor*, 19 Minn. 103; *State* v. *Governor*, 39 Mo. 388; *Inquiries by Governor*, 58 Mo. 369; *State* v. *Governor*, 1 Dutch. 331; *Mauran* v. *Smith*, 8 R. I. 192; *Turnpike Co.* v. *Brown*, 8 Baxter 490; *Houston Railroad Co.* v. *Randolph*, 24 Texas 317.

The consideration that disobedience of the writ may be followed by imprisonment until compliance, is decisive against the propriety of its issuance against the governor in any case. The chief executive power of the State is vested in him. It is his duty to see that the laws are faithfully executed. The power of the State is at his command for this purpose. He may in cases of emergency convene the legislature. He has important functions as part of the law-making power. It would be his duty to employ the power of the State at his command to maintain the rightful authority of the judiciary and enforce its judgments. May that judiciary imprison him for refusal to obey some order it may make to operate on him as the chief executive of the State? Whence comes this ascendancy of the judiciary over the executive? They are co-ordinate departments, created alike by the constitution, declared to be distinct, and to be kept separate as to the exercise of the powers confided to each.

If the governor could not be removed from the performance of the functions of his office by imprisonment to compel compliance with the writ of mandamus, the judgment would be mere advice, and courts do not advise. If it be assumed that the governor would not disobey the command of the writ, still it should be denied, because he should not be subjected to the alternative of acting "contrary to his judgment, or stand convicted of a disregard of the laws." In the language of the Supreme Court of Michigan by Cooley, J.: "To do this would be not only to question the wisdom of the constitution or the law, but also to assert a

right to make the governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to intrust to the other departments of the government." This language was used in combating the proposition that there is a distinction as to the character of the different duties devolved on the chief executive by the constitution or laws, and we adopt it as expressive of our view of the absence of power in any case to issue a mandamus to require the governor to do any act.

*Judgment affirmed.*