BROOM *v.* HENRY.*

(En Banc.   June 16, 1924.)

[100 So. 602.   No. 24218.]

1. STATES. *Authority of Governor as to approval of bonds of state officials stated.*

   The only authority under our statutes vested in the Governor with reference to the approval of bonds of state officials is to pass upon their sufficiency both in substance and form.

2. STATES. *State officer, whose bond insufficient, required to be notified to give new bond.*

   If the bond be found insufficient, then under section 3469, Code of 1906 (section 2807, Hemingway's Code), the Governor must notify the officer to appear at a day and place to be named within ten days to give a new bond.

3. STATES. *Governor cannot fill alleged vacancies for insufficiency of bond until notice for new bond has been given.*

   Until this notice has been given, and this time has expired within which to file a new bond, there is no vacancy in this office, and the Governor cannot appoint another to fill such alleged vacancy.

_____

*Headnote 1.  States, 36 Cyc, p. 858 (1925 Anno); 2. States, 36 Cyc, p. 858 (1925 Anno); 3. States, 36 Cyc, p. 861.

APPEAL from circuit court of Hinds county.
HON. W. H. POTTER, Judge.

*Quo warranto* by Stewart C. Broom against T. M. Henry. From a judgment for defendant, plaintiff appeals. Affirmed.

*Stewart C. Broom, Pro Se.*

Our theory of the case is as follows: (1) Failure to qualify avoids election. (2) That the approval of the bond is a condition precedent and must be complied with; that tender of a good and sufficient bond is not a compliance with this condition if the bond be not approved. (3) When a vacancy occurs by reason of a failure to

qualify as aforesaid, it becomes the duty of the Governor to fill same by appointment. (4) And when the appointment by the Governor is to fill a vacancy in an elective office, it is not required to be by and with the consent of the Senate. It is only in the case of an appointive office, that it is necessary to make the appointment by and with the consent of the Senate. (5) The Governor is the head of the Executive Department of the state and this department is co-ordinate with, of equal power and dignity to, but free and independent from, and separate and apart from, the judicial and legislative departments; therefore, in the exercise of judgment and discretion, entrusted to the head of the Executive Department, the Judicial Department has no jurisdiction, no right to review and no power to enforce their finding of law or fact, if they should review it. (6) Power and duty vested in the Governor as the head of the Executive Department by the organic law and by statute is notice to all the world that he will exercise his judgment and discretion in such matters when the occasion arises or when circumstances require it, and no further notice is necessary, except where specially designated by statute.

Proposition No. 1 is founded upon statutory law as shown by section 2797, Hemingway's Code (section 3459, Code of 1906). Proposition No. 2 is supported by authorities construing the foregoing section. *Andrews* v. *Covington*, 69 Miss. 740; *Shotwell* v. *Covington*, 69 Miss. 735; *Swann* v. *Gray*, 44 Miss. 393. The third proposition is supported by statute, section 6822, Hemingway's Code (section 4189, Code of 1906).

From the foregoing it is manifest that the consent and confirmation of the Senate is unnecessary in the case of an elective office, such as the office of Insurance Commissioner. This statute is sometimes confused with section 4776, Hemingway's Code (section 2384, Code of 1906). The fifth proposition is the milk in the cocoanut in this case; and yet, strange to say, the court and counsel all

agree that in the exercise of judgment and discretion the Executive Department of the Government is free and independent; and the acts of the Chief Executive cannot be inquired into, reviewed, nor controlled by the judiciary; but, says the court, in effect the Chief Executive must give notice before he exercises judgment and discretion.

The difference between a Republican form of government and a Monarchy, is that our government is divided into three separate and distinct departments: The Executive, Judicial, and Legislative. See articles 1, 2, and 3 of Federal Constitution, and article 1, section 1, of the Constitution of the state of Mississippi. The Organic Law deals in generalities, and the statutes go into detail, so we find that the legislature in carrying out this scheme of the Organic Law confided certain details to certain departments. See section 5015, Hemingway's Code (section 2551, Code of 1906).

We have already seen that failure to qualify avoids election (section 2797, Hemingway's Code), that approval of bond is a condition precedent that must be complied with, that tender of good, valid, solvent and sufficient bond to approving officer is not a compliance with the condition precedent if, as a matter of fact, it be not approved, and this is true even though the approving officer acted arbitrarily, capriciously, or out of a spirit of malice or prompted by pure cussedness, as is said in substance in the case of *Andrews* v. *Covington*, 69 Miss. 740, 13 So. 852; *Shotwell* v. *Covington*, 69 Miss. 735, 12 So. 260; *Swann* v. *Gray*, 44 Miss. 393. In these cases it was said that it was in the nature of a *quasi*-judicial act and not subject to mandamus.

Our court held in *Vicksburg & Meridian R. R. Co.* v. *Governor Lowry*, 61 Miss. 102, than even though the act was purely ministerial on the part of the Governor, it could not be coerced or dictated by the judiciary or the judicial department.

This is not a matter of first impression. This is the doctrine enunciated and the rule promulgated by the highest court in the land as set forth in the case of *Decatur* v. *Paulding,* 14 Peters, (U. S.) 515.

The most exhaustive treatise on the subject, the best-reasoned case and the most beautifully written opinion on the subject is to be found on pages 570 to 596, 1 Arkansas, in the case of *Hawkins* v. *The Governor.* This is a case strikingly in point and adopted by Justice CAMPBELL in the *Vicksburg & Meridian R. R. Co.* v. *Lowry, supra.* The opinion in the Arkansas case is a masterpiece of law, logic, and reason, and covers every phase of the question.

The case of the *State of Florida, ex rel. H. Bisbee, Jr.,* v. *George F. Drew, Governor,* 17 Fla. 67, is also absolutely in point. An examination of this authority will disclose that it was there held that no court has jurisdiction over the official acts of the Chief Executive in the exercise of his judgment and discretion and in all cases where the question is submitted to a court, the court remands it to the "Conscience of the Governor."

The case of *John L. Sutherland, et al.,* v. *Governor,* 29 Mich. 320, is also a case strikingly in point. To the same effect is the rule stated and authorities collated in 12 R. C. L. 1008. So conclusive and plain are the foregoing authorities on the subject that the court below and counsel for appellee conceded the point, but, said the court, the Governor should have given ten days' notice under section 2807, Hemingway's Code, before exercising his judgment and discretion, and this brings us to a consideration of the sixth and last proposition involved.

It will be observed that this is a specific statute for a specific need, to-wit: an insufficient or insolvent bond. The title to the act is, "New Bond Required in Certain Cases." Examine the statute and analyze it and we find that the cases referred to and the cases intended to be covered by this statute are as follows: When the sureties shall permanently remove out of the state, or

become insolvent or in any case where the bond is found insufficient; these are the cases for which the statute was enacted, and the statute further designates what shall be done in such cases.

In this case there was no necessity for notice because there was no question of insufficiency involved. It did not come within the statute. If every surety company in the state had signed the bond, the Governor would not have approved it, not because it was insufficient, but because to have done so would have inducted him into office, and the Governor said he was ineligible to hold office because he was a defaulter.

*Fulton Thompson, J. Harvey Thompson,* and *Robert H. Thompson,* for appellee.

I.   Much is said in appellant's brief to the effect that the courts are powerless to control the judgment and discretion of the Chief Executive and that he cannot by mandamus or other legal proceedings be compelled to do or refrain from doing what in his judgment and conscience should be done or left undone. This contention by appellant has no application to this case. This suit is neither one for a mandamus nor an injunction, seeking to control gubernatorial action. Surely the courts have never decided that the judiciary is powerless to consider and determine the legal effect, the validity or invalidity, of acts of the Chief Executive.

There are two decisions of this court exactly in point, wherein this court considered gubernatorial acts and in each case, the performances of the Governor were held to have had no legal effect, but were void for want of power to do what preceding Governors had assumed to do. *Colbert* v. *State,* 86 Miss. 769; *Brady* v. *Howe,* 50 Miss. 607.

II.   The Governor is without power to create a vacancy in any state office by a mere failure to approve a

perfectly unobjectionable bond of a newly elected state officer, duly presented for his approval or disapproval. If he has the power to create a vacancy in one state office, the power extends to all of them. This is a Republican Government and its officers are elected by the people. What becomes of it, if a Governor on the last day of his term can, by failing to perform an official duty or otherwise, capriciously set aside elections by the people, the adjudication of its results as provided by the Constitution and fill all state offices to his own liking? No monarch of modern days had such power. The people of Mississippi have never invested its Governor with such power, and could not be induced to invest any man therewith, even if he were as wise as Soloman, as strong as Sampson, and as beautiful as Absalom.

Two decisions of this court are to the effect that no man can be deprived of a right by the failure of an officer to approve an unobjectionable bond seasonably tendered him for approval. *Winner* v. *Williams,* 82 Miss. 669; *Redus* v. *Gamble,* 85 Miss. 165. The two Covington cases cited by appellant Broom in his brief, *Shotwell* v. *Covington,* 69 Miss. 736, s. c. 12 So. 260, and *Andrews* v. *Covington,* 69 Miss. 740, s. c. 13 So. 260, were both decided before the cases cited herein, from 82 Miss. and 85 Miss. respectively, and are not in point.

III. The Governor, Russell, sent a message to the State Senate, then in session, informing it that he had formally appointed Mr. Broom to the office of Insurance Commissioner and this was done on the day he assumed to appoint him. This was a recognition by the Governor that the pretended appointment was necessarily to be confirmed in order to be valid. It was idle to inform the Senate of the alleged appointment except to enable that body to approve or disapprove the same. There was no necessity that the Governor in his message announcing the appointment should have prayed or asked the Senate to approve the appointment. The

Senate has never confirmed the alleged appointment and it adjourned without doing so.; it is not now in session, and whatever inchoate rights could have been claimed by Mr. Broom by reason of his alleged appointment can no longer be made. Even if this case should have been decided in appellant's favor by the court below, the decision there made against him is now a correct decision and this court will not by its judgment place any man in a public office who is not entitled thereto at the time this court renders its judgment. The Senate's non-action was itself a condemnation of Governor Russell's ill-advised and illegal action in attempting to award an office to appellant Broom to which Mr. Henry had been duly elected and was entitled to occupy. Mississippi Code of 1906, section 2384, we submit, is conclusive of this proposition. This section embraces all offices, vacancies in which are subject to such appointment, appointments by the Governor, and to vacancies occurring from any cause "during the session of the Senate."

The appellant, we submit, erroneously claims that the Code section has no application to elective officers. Code 1906, sections 2384 and 4188, must be construed together as if but one act of legislation.

IV. The Governor cannot create a vacancy in a state office by refusing to approve an official bond seasonably tendered him by a person duly elected to the office. If, however, such power be imagined, he cannot exercise it without notice to the elected person. Mississippi Code 1906, section 3469.

V. A Governor cannot on the last day of his term of office, either by action or non-action, preclude his successor from approving an official bond which the retiring Governor neither approved nor disapproved. This statement is correct and applicable to the case because Governor Russell did not disapprove Henry's bond; he failed to approve the bond because and only because he

disapproved the man Henry; he declared Henry to be ineligible because of his mere assertion that Henry was a defaulter. Our next inquiry will be touching the Governor's power to judicially convict and punish Mr. Henry for an alleged violation of the criminal laws of the state. If he be without such power the appellant has no case. The writing of a letter by Governor Russell to the secretary of state, in the privacy of his office and without notice to Henry, cannot and does not render him ineligible to office, no matter what may have been written in the letter.; the Governor's statement in the letter that he disapproved Henry's bond because Henry was a defaulter did not disqualify Henry from holding the office. It, however, shows that if the bond was disapproved by Russell its alleged disapproval was alone because of his disapproval of the man and not because of any objection to the bond itself.

The Governor's office is a continuous one, as hereinbefore stated. Governor Whitfield has as much right to act upon the bond on the first day of his term as Russell had on the last day of his term. The bond was a good and valid one. In either of the Governors had mistakenly disapproved of an official bond and had on the next day discovered his error in so doing he could at once have corrected his error and then have approved it. Whitfield had all the power on the first day of his term that Russell had on the last day of his official career, and Whitfield was as much empowered to correct Russell's errors or wrongdoings as Russell himself would have been had he remained in office. Broom the appellant did not obtain any right based upon Russell's errors or wrongdoings.

VI. The Governor has no judicial power. His action in declaring Henry to be a defaulter, if given any effect whatever, was conviction of Henry of a crime and that, too, without any notice whatever to him or giving him any opportunity to be heard. Our State constitution, section 14, provides that no person shall be deprived of

life, liberty, or property without due process of law.
This is as binding upon the Governor and upon the courts
as it is upon the legislature. Reason and common sense
revolt at the consequences that might follow from an
adjudication holding that the Governor had the power
sought to be exercised by him in this case.

*F. H. Lotterhos,* also for appellee.

I. The Courts Have Power to Determine the Legal
Effect of the Governor's Action or Inaction. *Brady* v.
*Howe,* 50 Miss. 607; *Colbert* v. *State,* 86 Miss. 769.

II. The One Clause in the One Sentence in the One
Statute Should not be Considered Alone, but all the Sec-
tions in the Constitution and Code of 1906 Adopted at
the Same Time, Treating of the Subject Should be Read
and Considered Together, with Full View of the Intent
and Policy; Seeking the Real Intention of the Legisla-
ture, and Adopting that Interpretation Which Will Give
Effect to Such Intention. *Eskridge* v. *Magruder,* 45
Miss. 294; *Clements* v. *Anderson,* 46 Miss. 581; *Adams*
v. *Y. & M. V. R. R. Co.,* 75 Miss. 285, 22 So. 824.

III. This Rule Applies Even Though it be Necessary
to Restrict the Force of Subsidiary Provisions that
Would Otherwise Conflict with the Paramount Intent.
25 R. C. L., 252-3-976.

IV. The Requirement for Approval of the Bond is
Directory and Ministerial Only. *Marshall* v. *Hamilton,*
41 Miss. 229; *State* v. *Lazier,* 77 Miss. 146, 25 So. 153;
*U. S.* v. *Eaton,* 42 L. Ed. 767 (772-3); *State* v. *Wharton,*
61 So. 2, 104 Miss. 8; *Sumrall* v. *Polk,* 118 Miss. 687,
79 So. 847.

V. A Sufficient and Proper Bond Should be Treated
as Approved. *Winner* v. *Williams,* 82 Miss. 669, 35 So.

308; *Redus* v. *Gamble,* 85 Miss. 165, 37 So. 1010; Throop on Public Officers, section 175; Meecham on Public Officers, 266; 22 R. C. L. 448; 29 Cyc. 1387.

VI.    The Determination of Officer Elect's Disqualification is Judicial in its Nature and, Even if the Legislature Could Commit it to the Governor, the Power Could not be Exercised Without Notice to and the Opportunity to be Heard by the Respondent. *State* v. *Smedes & Marshall,* 4 Cush. 47; *Lawson* v. *Jeffries,* 47 Miss. 686; *Doolittle* v. *Hays,* 91 Miss. 755 (765), 45 So. 728; 12 C. J. 808-899.

VII.    Statutes Allowing Summary Remedies Should be Strictly Construed. *Lombard* v. *Whitney,* Walker, 229; *Connell* v. *Lewis,* Walker, 251; *Banks* v. *Cage,* 1 H. 293; *Sloan* v. *Johnson,* 14 S. & M. 47; *McCreary* v. *Hoopes,* 25 Miss. 428.

VIII.    The Courts Will not Impute to the Legislature an Intention to Order that Which is Unreasonable or Absurd. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809.; *McElmore* v. *State,* 33 So. 225, 81 Miss. 422; 25 R. C. L. 1018, 1019, or Unjust or Unwise or Working Hardship. *Shelton* v. *Baldwin,* 26 Miss. 439; *Pattison* v. *Clingham,* 93 Miss. 310, 47 So. 503; *Gunter* v. *City of Jackson,* 94 So. 844; 25 R. C. L. 1022. Or Leading to Mischievous or Disastrous Consequences. 25 R. C. L. 1027. The Consequences are to be Considered. *Learned* v. *Corley,* 43 Miss. 687.

IX.    The Cases of *Shotwell* v. *Covington,* 69 Miss. 736, and *Andrews* v. *Covington,* 69 Miss. 740, 13 So. 853, are not Decisive of the Question Before the Court.

X.    The Only Time this Court has had Occasion to Express itself Concerning Section 3459 of the Code of 1906, as Relative to an Alleged Vacancy Because of In-

eligibility of Officer elect, it held that this Section Creates no Vacancy on Account of Ineligibility. *State* v. *Hays,* 91 Miss. 755, 56, 45 So. 728, 31.

*George Butler,* also for appellee.

Counsel for appellant would have the court construe section 3559, Code of 1906, as amended by chapter 32, Laws of 1917, literally and without regard to sections 3462, 1135, or 3469, Code of 1906, and without regard to the spirit and purpose of the legislation requiring an officer to qualify on or before the commencement of his term. The real nature of the decision of *Andrews* v. *Covington,* was pointed out by the late Justice Cook in *State ex rel.* v. *Horton,* 104 Miss. 8. According to the weight of authority, such statutes as section 3559, Code of 1906, as amended, are directory and are not to be construed literally or as mandatory. Throop on Public Officers, section 173; Meecham on Public Officers, section 265. This state has long since adopted this view. *Marshall* v. *Hamilton,* 41 Miss. 229; *State, ex rel.* v. *Lazier,* 77 Miss. 146; *State, ex rel.* v. *Horton, supra;* *Sumrall* v. *Polk,* 118 Miss. 687; *Schmulbach* v. *Speidel,* 55 L. R. A. 922; *Redus* v. *Gammil,* 85 Miss. 165; *Winner & Meyer* v. *Williams,* 82 Miss. 669, 29 Cyc. 1387. A leading case on this subject is *State* v. *Dahl,* 65 Wis. 510, 27 N. W. 343; *State* v. *Knight,* 82 Wis. 151; *People* v. *Fitch,* 1 Cal. 519; *People* v. *Scannel,* 7 Cal. 432; *Con P. Curan Co.* v. *City of St. Louis,* 111 S. W. 812; *Duffey* v. *State,* 60 Neb. 812, — N. W| 264; *State* v. *Lansing,* 46 Nev. 514.

Appellant argues that the Governor's declaration that appellee was ineligible to the office of Insurance Commissioner and that a vacancy existed therein, was final. He has manifestly overlooked the case of *Hayes* v. *Doolittle,* 91 Miss. 755.

The outgoing Governor's act determined nothing. In his view, there was a vacancy in the office because ap-

pellee was ineligible thereto, but he was not clothed with power or authority to determine that question. If appellee was ineligible in fact, that was a question to be determined by the court. The Governor's view that appellee was ineligible did not justify him in refusing to approve his bond without notice or without a hearing.

*Stewart C. Broom, Pro Se,* in reply.

The briefs filed have in substance reduced the issue to the following question: Was there a vacancy in the office of State Insurance Commissioner at the time the appellant was appointed?

Counsel for appellee in substance and effect practically concede that if there was a vacancy at the time of appellant's appointment, then the appellant is the State Insurance Commissioner and entitled to possession of the office. But they deny that there was a vacancy because: (1) They argue that the law as stated in section 3559, Code of 1906, as amended by chapter 32, Laws of 1917, the title of which is "Failure to Qualify Avoids Election," is directory merely and not mandatory, and (2) they argue that if the law is mandatory there is an exception to the general rule and the facts in the present case bring the case within the exception to the rule.

The appellant's position is: (1) that the law is mandatory; that the approval of an official bond and the issuance of the commission is a condition precedent that must be complied with; and (2) that there is no exception to the rule in Mississippi; and, further, that if there was an exception to the rule, as contended by counsel for appellee, the facts in this case do not bring it within the exception to the general rule.

Argued orally by *S. C. Broom, pro se, R. H. Thompson, Geo. Butler,* and *F. H. Lotterhos,* for appellee.

SYKES, J., delivered the opinion of the court.

*Quo warranto* proceedings were instituted in the circuit court of Hinds county by the appellant, Broom,

against the appellee, Henry, for the purpose of having the court declare which of these two men is the state insurance commissioner.

The information of Broom in short alleges the following facts: That Broom is the insurance commissioner of the state, but that Henry unlawfully holds and exercises the functions of the office; that he, Broom, was appointed insurance commissioner by Governor Russell on the morning of the 22d day of January, 1924, and immediately thereafter qualified by executing proper bond which was duly approved by the Governor and filed with the secretary of state; that he took the oath of office, and a commission was issued to him by the Governor; after thus qualifying as state insurance commissioner, and about noon of that same day, viz., January 22, 1924, he went to the offices of the state insurance commission for the purpose of demanding that Henry surrender the offices, records, etc., to him; that these offices were locked at that time, supposedly for the Governor's inaugural parade; that some time during the afternoon upon Henry's return to the office this demand was made upon him, which was by Henry refused. The information further alleges that Henry was elected to this office and executed a bond as required by law, and tendered it to Governor Russell for approval but that the Governor, for reasons sufficient to himself, as stated in a letter from Governor Russell to the secretary of state, refused to approve Henry's bond, and refused to issue to him a commission as insurance commissioner, and returned the bond to the secretary of state, giving his reasons in a letter for refusing to approve same. This letter was made an exhibit to the information, and states the appointment of Broom, and that on yesterday (January 21, 1924), the Governor had returned the bond of Henry to the secretary of state, and that he refused to approve the bond, and also refused to sign Henry's commission because Henry is a defaulter, being short in his accounts to the state, and was not eligible to hold the office for the

last four years by his own admissions of defalcations, and is still disqualified; that the office has been conducted in such way that he, as chief executive, under his sworn duty, cannot approve. The letter then deals with the appointment, etc., of Broom. This letter is dated January 22, 1924, and was evidently written before Governor Whitfield became Governor, viz., at noon that day. The information further alleges that the term of office of the state insurance commissioner, which was at that time also held by Henry, expired on January 21, 1924, and the office thereupon became vacant at that time; that under the law when a vacancy thus occurs the Governor has the right to appoint an officer to fill this vacancy. To this information are attached as exhibits the letter of the Governor referred to above, the oath of office executed by Broom, and his commission and bond approved by the Governor.

The defendant, Henry, pleaded the general issue and a special plea. It is necessary to set out somewhat in detail the averments of this special plea. It alleges Henry's election to this office at the regular November election in 1923, and that he received a majority of the votes in this election, which votes were properly certified to the secretary of state, by him delivered to the speaker of the House of Representatives at the regular session of the legislature which began in January, 1924, and a proper opening and counting of these votes by the speaker of the House in the presence of the members of the House, and that it was there found that defendant had received a majority of all the votes, and he was declared to be elected to this office for the term beginning January 21, 1924. A copy of the resolution declaring Henry elected is attached as an exhibit to the plea. The plea then alleges that Henry was eligible to hold the office, and that on January 17, 1924, he took and filed the oath of office as required by law, and executed a proper and legal bond for this term in the proper penalty with a surety company as surety, which company was authorized to do business

in this state and to execute this bond; that the bond was a legal .and valid bond, conditioned in accordance with law; that this bond was tendered to Governor Russell to be approved; that, the Governor knowing that the bond was a good and solvent bond in the proper penalty and properly conditioned, as required by law, that the surety was qualified to make a bond in this state, nevertheless he refused to approve the bond, for the alleged reason that the defendant was ineligible to hold the office of insurance commissioner, although the defendant was eligible; that the Governor did not find either that the bond was insufficient or not in proper form or penalty or that the surety was not solvent or possessed of the proper capital required by law; that the Governor did not notify Henry to appear and give a new bond with other sureties. Defendant then avers that he did everything required by law of him to do to qualify as insurance commissioner, but that the Governor arbitrarily refused to approve the bond. The defendant then averred that Governor Russell's term of office expired at noon January 22, 1924, and that he was succeeded by Governor Whitfield at that time; that immediately after Whitfield became Governor he approved the defendant's bond and issued to him a commission.

The plea further alleges that after the attempted appointment of Broom by Governor Russell the Governor notified the Senate then in session of this appointment, but that the Senate did not confirm Broom.

There was a demurrer to this special plea. The demurrer was overruled, the appellant declined to plead further, and judgment final was entered in favor of appellee. From which judgment this appeal is here prosecuted.

It is the contention of the appellant that one of the necessary steps in qualifying to hold the office is the approval of the bond by the Governor; that this is a condition precedent, and must be complied with, and that the tender of a good and sufficient bond is not such a com-

pliance, unless and until it is approved by the Governor; that, because of the failure of the Governor to approve the bond, the election was avoided, and that the failure to qualify created a vacancy in this office, which vacancy under our law the Governor had the right to fill by appointment, and did fill by the appointment of the appellant; that it is not necessary for the Senate to confirm the appointment of the Governor under these conditions; that the Governor exercised his judgment and discretion in refusing to approve Henry's Bond, and that the judicial department has no jurisdiction to review this action of the Governor.

To sustain these contentions the appellant relies principally upon section 2797, Hemingway's Code (section 3459, Code of 1906); *Swann* v. *Gray,* 44 Miss. 393; *Andrews* v. *Covington,* 69 Miss. 740, 13 So. 853; *Shotwell* v. *Covington,* 69 Miss. 735, 12 So. 260; *Railroad* v. *Lowry,* 61 Miss. 102, 48 Am. Rep. 76.

Section 2797, Hemingway's Code (section 3459, Code of 1906), is as follows:

"If any person elected to any office shall fail to qualify as required by law, on or before the day of the commencement of his term of office, or if for any cause an officer should hold over after his regular term of office expires under the authority given him to hold over until his successor is elected and qualified, a vacancy in such office shall occur thereby, and it shall be filled in the manner prescribed by law for filling vacancies in such offices, unless the failure to qualify arises from there being no officer to approve the bond of such officer elect, and except the Governor-elect, when the legislature fixes by resolution the time of his installation."

The cases of *Swann* v. *Gray* and *Shotwell* v. *Covington,* supra, both hold that the act of the officer in approving or disapproving an official bond is *quasi*-judicial, and, however arbitrary or unjust this officer may act, his action cannot be controlled by mandamus.

The case of *Railroad* v. *Lowry, supra,* holds that the Governor of the state cannot be compelled by mandamus to perform any act.

In this case there was no attempt by either party to compel the Governor to act or to refrain from acting. Both Governors have acted in this matter, and the question here presented is the legality of these acts. We might say, in passing, that we thoroughly agree with the rules announced in the above cases which preserve the independence of the three departments of government.

While the judicial department cannot in any way compel the Governor to act or refrain from acting, yet, when he has acted, this court has also uniformly held, as is in accord with the overwhelming weight of authority, that the legality of the act is a judicial question for the courts. *Brady* v. *Howe,* 50 Miss. 607; *Colbert* v. *State,* 86 Miss. 769, 39 So. 65.

The case of *Andrews* v. *Covington, supra,* is more in point, and the latter part of this opinion apparently sustains the contention of the appellant. We quote that part of the opinion:

"But relator's petition was also subject to demurrer. He shows by it that he has not qualified himself (if otherwise competent) to enter into the discharge of the duties of the office by having given an official bond approved by the proper authorities, as the law requires. The law requires that one desiring to enter upon the offices named in the petition shall, as a condition precedent thereto, execute and have approved by certain officials designated an official bond for each office. The tender of a good bond, if rejected by the approving officer, cannot be held to be a compliance with this statutory condition. Nothing short of what the law requires is sufficient."

This record presents only questions of law. By the pleadings it is admitted that the appellee, Henry, was duly elected to this office, and so declared by the House of Representatives; that he subscribed to the oath of office, and executed a legal and valid bond, which was ten-

dered to the Governor for approval; that Henry was eligible to the office, but that the Governor declined to approve the bond, because he thought Henry was a defaulter, and therefore not eligible to hold the office. The Governor, because of his failure to approve Henry's bond, thought Henry for this reason had failed to qualify as insurance commissioner, and that a vacancy existed, and he therefore appointed appellant, Broom, to fill this vacancy in accordance with section 6822, Hemingway's Code (section 4188, Code of 1906), which provides that, when a vacancy occurs in a state office which is elective, the same shall be filled by appointment by the Governor for the unexpired term. Broom immediately qualified as such officer. After this, and that same afternoon, Governor Whitfield approved Henry's bond.

It is of vital importance to consider what authority is vested in the Governor by our statutes relating to the approving of official bonds by him. Is his authority limited to the question of merely passing upon the sufficiency of the bond both in form and substance, or has he the right to consider the eligibility of the officer elect? If his authority is merely limited to the sufficiency of the bond, then should he fail to approve, necessarily it can only be for one reason, viz., that the bond is insufficient. In considering this question it is necessary to consider the Constitution and the statutes relating to this matter in order to ascertain the general scheme of our government in relation thereto.

Section 140 of our Constitution states how the Governor is chosen. Section 143 requires that other state officers be chosen at the same time and in the same manner as is the Governor. Under these sections the speaker of the House of Representatives opens and publishes these returns in the presence of the House, and the House ascertains and declares who is elected.

Section 268 of the Constitution prescribes that all officers elected or appointed shall, before entering upon the

discharge of their duties, take and subscribe a certain oath.

Under these sections of the Constitution the House of Representatives declare what officers are elected. It then becomes the duty of the officers to take this oath.

Certain sections of the Code provide that certain officers execute bonds. Section 3462, Code of 1906 (section 2800, Hemingway's Code), requires certain state officers to execute these bonds to be approved by the Governor and the commissioner of insurance, and, when so approved, the same shall be filed and recorded in the office of the secretary of state, except that the bond of the secretary of state, when recorded by him, shall be filed with the clerk of the supreme court.

That part of Section 2551, Code of 1906 (Section 5015, Hemingway's Code), relating to the insurance commissioner, which is material, is as follows:

"Before entering upon the discharge of his duties the commissioner shall take the oath of office required of state officers, and give a bond in favor of the state in the penalty of ten thousand dollars, with some guarantee company or companies authorized to do business in this state, to be approved by the Governor, conditioned for the faithful performance of the duties of said office during his term, which bond and oath of office shall be filed with the secretary of state."

Section 3463, Code of 1906 (section 2801, Hemingway's Code), provides that a failure to observe the form of the bond prescribed by statute does not vitiate the bond, and that all official bonds are valid, whether approved by the proper officer or not approved by any.

Section 3469, Code of 1906 (section 2807, Hemingway's Code), is important, and reads as follows:

"In case the sureties, or any of them, of any state or county officer shall permanently remove out of the state or become insolvent, or if, from any cause, an official bond shall be found insufficient, the Governor in the case of a state officer, and board of supervisors in the case of

a county officer, shall notify such officer to appear. at a day and place to be named within ten days thereafter, to give a new bond with other sufficient sureties, in a penalty equal to that of the former bond and with the like condition, or show cause why the same should not be required; and if such officer fail or neglect so to do within a time to be designated, his office shall thereby become vacant, and he shall cease to discharge any of the duties thereof; and, if a state officer, the Governor shall cause the vacancy to be filled as in other cases; and, if a county officer, the vacancy shall be filled as in other cases of vacancy in county offices. From proceedings under this section there shall be no appeal; and if the officer to be notified be without the state or abscond, he may be notified by publication as defendants in chancery are so notified.''

Section 2669, Code of 1906 (section 5135, Hemingway's Code), provides what sort of surety bonds may be accepted as surety.

Section 1135, Code of 1906 (section 863, Hemingway's Code), makes it a misdemeanor for a person elected to office to undertake to discharge the duties thereof without having first taken the oath of office or given bond.

Under our laws all state officers, except the members of the judicial department are chosen at the same time. The House of Representatives declares who are the officers elect. The statutes require a number of these officers to execute bonds. All of these bonds, except that of the insurance commissioner, have to be approved by both the Governor and the insurance commissioner. The bond of the insurance commissioner has to be approved alone by the Governor. All of these bonds have to be filed with the secretary of state.

The power rests with the qualified electors to select the state officers. The House of Representatives reports and declares the result of the choice of the people, and says what officers are elected. These officers then qualify by subscribing to the oath of office, and in those cases, where

required, by executing proper bonds and submitting to the proper officials for approval.

It is perfectly manifest that the only authority vested in the Governor and the insurance commissioner with reference to the approval of these bonds is to say whether they are sufficient or insufficient. Neither of these officials is vested with any authority to pass upon the qualifications of the officer elect. These officers have already been declared elected by the House of Representatives. These provisions relating to the approval of the bonds are merely safeguards to provide for an examination of these bonds. The insurance commissioner has just as much authority with reference to the bonds to be approved by him as has the Governor. It is contrary to the general scheme of our government and of the laws relating thereto to think that these state officers exercise any authority with reference to the qualifications or eligibility of the officers whose bonds they are to approve, but the authority vested in them by these laws is only to pass upon the sufficiency of the bond.

If the bond be found insufficient, then section 3469, Code of 1906 (section 2807, Hemingway's Code), requires that the Governor notify the officer to appear at a day and place to be named within ten days thereafter to give a new bond. This was not done by the Governor, because from the record we know that he did not fail to approve the bond because of the insufficient surety, but he erroneously attempted to pass upon the qualifications of Henry. Under this statute the Governor, or other approving officer, can only fail to approve because of the insufficiency of the bond and this officer must be given ten days within which to execute a new bond. There is not a failure to qualify because the bond was not approved by the Governor. The ten-day notification must be given and the officer permitted to execute another bond. In this case Henry's bond was approved by Governor Whitfield the next day, and therefore every act prescribed by the statute has been complied with, and

Henry is the duly elected and qualified commissioner of insurance.

In neither of the *Covington cases, supra,* was the question of the giving of a new bond raised. This statute was not invoked by Covington, the officer elect. There is nothing therefore in the Covington case in conflict with this opinion. It is to be noted, however, that that part of the opinion in that case above quoted was not necessary to a decision of the case, because the court had already declared that under Covington's own admission he could not hold the office because he was not a qualified elector at the time of his election, and was therefore ineligible to the office. The court then goes on and gives another reason why Covington could not hold office, viz., that he failed to qualify.

In discussing this case in *State* v. *Wharton,* 104 Miss. 8, 61 So. 2, Ann. Cas. 1915D, 410, this court, through Judge SAM C. COOK, said this about it, at page 31, Mississippi Report:

"Counsel for the state relies on *Andrews* v. *Covington,* 69 Miss. 740, 13 So. 853, to support the theory that our statutes are mandatory. The writer was of counsel in the trial of this case in the circuit court, and has some knowledge of the points upon which the case went off. The facts were that Covington, although elected by the people, was not a qualified elector; he having failed to pay all taxes legally assessed against him. He was not so qualified at the time he filed the petition, nor at the time the same was heard. What the court did really decide was that Covington was by the Constitution disqualified to hold the office to which he had been elected. He subsequently did pay up all taxes assessed against him, the board of supervisors called a special election to fill the vacancy, and Covington was re-elected and inducted into office, and held the office for four consecutive terms."

We are not called upon in this case to consider the question of whether or not, when an officer has done all

in his power to qualify by subscribing to the oath of office and giving a proper bond, that he can eventually be prevented from holding this office by the arbitrary refusal of the approving officers to approve the bond. Neither are we called upon to say whether or not the approving of a bond is merely directory or mandatory. Our views of this case do not necessitate deciding these questions.

We are indebted to counsel on both sides of this case for their able and exhaustive review of the authorities bearing upon the questions involved. Their briefs have lightened very much the work of the court, as well as given us the benefit of all the authorities material to the issue.

The judgment of the court is affirmed.

*Affirmed.*