# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-IA-01842-SCT

*STATE OF MISSISSIPPI*
*v.*
*ELLIOT CULP*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/24/2000 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| | JUDY T. MARTIN |
| ATTORNEYS FOR APPELLEE: | IMHOTEP ALKEBU-LAN |
| | CHOKWE LUMUMBA |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED-08/01/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/22/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Holmes County Circuit Judge Jannie M. Lewis entered a gag order in a capital murder case, *State v. Elliot Culp and Travis Lowe*, Cause No. 10607. Subsequently, the Attorney General, independent of the District Attorney, petitioned this Court for a remedial writ to revoke Culp's bond, and this Court granted the State's emergency petition. *In re: State*, No. 2000-M-00887-SCT (Miss. 2000). In discussing the revocation of Culp's bond, the Attorney General made several statements to the media regarding the evidence against Culp. Culp moved the circuit court for a show cause order why the Attorney General should not be held in contempt. The court entered the order as requested.

¶2. At the hearing before the trial court, the Attorney General argued that the gag order was invalid and that circuit court should recuse itself from the matter. The court denied all motions of the Attorney General, and it is from these rulings that the Attorney General now appeals, with permission of this Court. *See* M.R.A.P. 5. The contempt proceedings against him have been stayed pending the resolution of this appeal.

## FACTS

¶3. On May 26, 2000, the circuit court entered, sua sponte, a gag order in ***State v. Elliot Culp and Travis Lowe***, Cause No.10607. The order was entered without a hearing and provided in pertinent part as follows:

> This matter having come before this Court for a Gag Order and this Court having considered this matter, and in and [sic] effort to ensure that the defendants herein receive a fair and impartial trial in the Circuit Court of Holmes County, hereby enters a Gag Order in this matter.
>
> IT IS THEREFORE ORDERED that all attorneys, their representatives, parties, witnesses and court personnels [sic] are prohibited from discussing or commenting on any aspects of this case. The clerk's office is however allowed to advise the media of motions or trial settings in this cause.

A news article was published in the Metro section of *The Clarion-Ledger*, a Jackson newspaper, on May 27, 2000, gave the details of the gag order, but no notice was published in the 'legal notices' section of the newspaper. Theresa Klely, *Gag Order Issued in Slaying Case*, The Clarion-Ledger, May 27, 2000, at B1. The gag order was never served on the Attorney General or anyone within the Office of the Attorney General. No one from the Office of the Attorney General appeared in the matter before the circuit court, except to object and respond to the contempt proceedings at issue.

¶4. On June 2, 2000, Attorney General Mike Moore filed an emergency petition with this Court to revoke the bond of Elliot Culp. This Court granted the State's petition on July 5, 2000. ***In re: State***, No. 2000-M-00887-SCT. On June 15, 2000, Culp filed a show cause motion in the circuit court, requesting that Moore be found in contempt of court. The motion alleged that Moore made the following statements to the media:

> 1. In the June 3, 2000, issue of The Clarion-Ledger, Moore was quoted to have stated, "I believe this man is a danger to the community. The evidence is very strong that he committed this crime and he should not be walking the street." The article also states "Moore and Special Assistant Attorney General Judy T. Martin cite the DNA evidence in the petition: 'There is substantial testimonial, physical and scientific evidence linking Culp to these horrendous crimes. Rarely is the proof ever so evident in any case.'"
>
> 2. In a June 8, 2000, television interview, Moore stated, "I hope by maybe this week or early next week the Supreme Court of our state will revoke his bond and put him in jail with the other co-defendant in this case. I think there is a very strong presumption that this young fellow was involved in this murder and it's just not right having him walk around a free man."

Culp filed a second show cause motion on July 18, 2000, alleging that Moore had made the following additional statements:

> 3. In the July 6, 2000, issue of The Clarion-Ledger, Moore was quoted as stating, "I think the

Supreme Court did a very good job reviewing the facts and the law in this case. We felt the evidence was strong and the presumption of guilt was great and the bond needed to be revoked."

4. In a July 5, 2000, television interview, Moore stated, "Well we think it's a real important decision. I had a lot to do with the bail laws that have been written and the constitutional amendment that was put into law basically says that if you commit a crime like this or there's strong evidence that you've committed a crime like this that you are not entitled to bond. So that's why we fought so hard to make sure this case stood up. It will send a message across this state to other judges -- take a strong look at the evidence in the case before you decide to let them have bond." On another broadcast, Moore stated, "We filed an emergency petition with the Supreme Court asking the Supreme Court to revoke his bond. The local Judge had continued to allow him out on bond. The Supreme Court has now ruled that his bond is revoked."

5. In a July 5, 2000, broadcast, Moore stated, "The law says when the evidence is strong and the presumption great then the defendant shall be denied bond in the case of capital murder and so we're just trying to see the law is maintained."

¶5. On July 20, 2000, the circuit court ordered the Attorney General to respond in writing, and the Attorney General complied. The court entered the show cause order.

¶6. On October 4, 2000, the Attorney General filed with this Court a Petition for Expedited Writ of Prohibition in which he requested that this Court vacate the gag order and the show cause order. This Court dismissed the petition without prejudice because the State had not first sought relief in the trial court.

¶7. A hearing was held before the circuit court on October 16, 2000. At the hearing, the court heard argument on the following motions by the Attorney General: (1) motion to dismiss for lack of jurisdiction the defendant's show cause motion; (2) motion to hold that the gag order does not apply to the Attorney General; (3) motion to vacate the gag order; and (4) motion for the circuit court to recuse itself. The court denied all motions from the bench and entered written orders to that effect on October 24, 2000. The circuit court certified these issues for interlocutory appeal to this Court, and this Court granted the State's Petition for Interlocutory Appeal on July 18, 2001. *See* M.R.A.P. 5.

¶8. We find that any comments by the Attorney General were made concerning the separate action concerning solely the issue of Culp's bond. The Attorney General never appeared before the circuit court and never received notice of the gag order, thus he could not have wilfully violated the order. We reverse and render the trial court.

¶9. We also note that the general rule is that this Court does not grant interlocutory appeals in a criminal case. **Beckwith v. State**, 615 So. 2d 1134 (Miss. 1993). However, the case at bar does not involve any of the issues in the criminal proceedings in **State v. Elliot Culp**. The Attorney General was required to cite the style of that case and lower court's number because the gag order arose from that case. However, the Attorney General's bond proceedings before this Court was a separate case, styled differently and assigned a different number by this Court. The issue before us is singular involving only a contempt citation against the Attorney General for alleged violations of a gag order imposed in the **State v. Elliot Culp** proceedings. Therefore, **Beckwith** is inapplicable here.

¶10. The Attorney General raises the following issues for consideration by this Court:

**I. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE ATTORNEY GENERAL'S MOTION TO DISMISS FOR LACK OF JURISDICTION THE DEFENDANT'S FIRST AND SECOND MOTIONS FOR ORDER TO SHOW CAUSE WHY THE ATTORNEY GENERAL SHOULD NOT BE HELD IN CONTEMPT AND FOR ORDER FINDING THE ATTORNEY GENERAL IN CONTEMPT OF COURT.**

**II. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE ATTORNEY GENERAL'S MOTION TO HOLD THAT THE GAG ORDER DOES NOT APPLY TO THE ATTORNEY GENERAL.**

**III. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE ATTORNEY GENERAL'S MOTION TO VACATE THE MAY 26, 2000, GAG ORDER.**

**IV. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE ATTORNEY GENERAL'S MOTION FOR THE TRIAL COURT TO RECUSE ITSELF.**

## STANDARD OF REVIEW

¶11. This is an interlocutory appeal to determine if Attorney General Mike Moore can be held in contempt by the Circuit Court of Holmes County. M.R.A.P. 5(c). When the basis for an interlocutory appeal is a question of law "this Court will review those issues, as all other questions of law, de novo." *Stewart v. City of Jackson*, 804 So. 2d 1041, 1046 (Miss. 2002)(citing *Gant v. Maness*, 786 So. 2d 401, 403 (Miss. 2001)). This Court reviews a trial court judge's refusal to recuse themselves under the manifest error standard of review. *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997)(citing *Davis v. Neshoba County Gen. Hosp.*, 611 So. 2d 904, 905 (Miss. 1992)).

¶12. Issues I and II are determinative in this case thus there is no need to address the remaining two issues.

## DISCUSSION

**I. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE ATTORNEY GENERAL'S MOTION TO DISMISS FOR LACK OF JURISDICTION THE DEFENDANT'S FIRST AND SECOND MOTIONS FOR ORDER TO SHOW CAUSE WHY THE ATTORNEY GENERAL SHOULD NOT BE HELD IN CONTEMPT AND FOR ORDER FINDING THE ATTORNEY GENERAL IN CONTEMPT OF COURT.**

¶13. At issue is whether Attorney General Moore was subject to the jurisdiction of the gag order entered in the Holmes County Circuit Court. The Attorney General is a constitutional officer of the State of Mississippi, Miss. Const. art. 6, § 173, vested with common law duties, as well as statutory duties to act as "the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state. . . .[and is given] sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest." Miss. Code Ann. § 7-5-1 (1991). Along with those duties, the Attorney General is charged with the duty to "attend the supreme court, in person or by his assistant, and prosecute and defend therein all causes to which the state or any officer thereof in his official capacity is a party." *Id*. § 7-5-29. The Attorney General is also authorized, at his own discretion, to intervene in circuit court cases in order to "assist the district attorney there in the discharge of his duties." *Id*. § 7-5-53. Therefore, the Attorney General has many constitutional, statutory, and common law duties, but "paramount to all of his duties, of course, is his duty to protect the interests of the general public." **State ex**

*rel. Allain v. Miss. Pub. Serv. Comm'n*, 418 So. 2d 779, 782 (Miss. 1982). This Court has original jurisdiction for petitions for extraordinary writs, such as the one for revocation of bond in this case. M.R.A.P. 21.

¶14. In determining whether the Attorney General can be held in contempt, this Court must determine if the alleged contumacious words were spoken as part of the prosecution of Elliott Culp in Cause No. 10607 before the Holmes County Circuit Court and, therefore, subject to the May 26, 2000, gag order, or if they were spoken concerning the petition to the Supreme Court styled *In re: State*, No. 2000-M-00887. The most relevant part of the gag order is the sentence that prohibits attorneys involved to make comments "on any aspects of *this* case." (emphasis added).

¶15. There is no evidence in the record to suggest that Attorney General Moore filed the petition for revoking Culp's bond at the request or direction of the Holmes County District Attorney. The Attorney General maintains that he filed the petition of his own volition, in order to protect all the citizens of Mississippi from having Culp out on bond. At no time prior to the hearing on the show cause motion did the Attorney General, or any of his assistants, make an appearance in Holmes County Circuit Court to assist in the prosecution of Culp. Since there appears to be no legal precedent for the proposition that the petition before the Supreme Court was an extension of the criminal case, the petition was its own action and any comments made in the course of prosecuting it were beyond the purview of the circuit court. Therefore, the only time that the Attorney General made an appearance in this case was at the October 16, 2000, show cause hearing.

¶16. Therefore, Attorney General Moore's comments were made in reference to the action *In re: State*, which was instituted by Attorney General Moore pursuant to his role as appellate advocate for the State of Mississippi and in accordance with the rules of appellate procedure granting original jurisdiction to the Supreme Court in cases of extraordinary petitions. We hold that the Attorney General's actions were beyond the scope of the gag order, and the October 24, 2000, order of the circuit court denying the Attorney General's Motion to Dismiss for Lack of Jurisdiction the Defendant's First and Second Motions for Order to Show Cause Why Attorney General Mike Moore Should Not Be Held in Contempt and for Order Finding Mike Moore in Contempt of Court is hereby reversed and rendered.

> ## II. WHETHER THE CIRCUIT COURT ERRED IN DENYING THE ATTORNEY GENERAL'S MOTION TO HOLD THAT THE GAG ORDER DOES NOT APPLY TO THE ATTORNEY GENERAL.

¶17. The next question appealed by the Attorney General is whether the gag order applies to him. The Mississippi Uniform Circuit and County Court Rules state that:

> Prior to the conclusion of the trial, no defense attorney, prosecuting attorney, clerk, deputy clerk, law enforcement official or other officer of the court, may release or authorize release of any statement for dissemination by any means of public communication on any matter concerning: . . . .

> 6. The defendant's guilt or innocence, or other matters relating to the merits of the case, or the evidence in the case.

U.C.C.C.R. 9.01. The Mississippi Rules of Professional Conduct provide that "[a] lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public

communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding." M.R.P.C. 3.6 (a). In order for a person to be held in contempt for the violation of a court order, the contempt must be willful and deliberate action by the contemnor. *Brame v. State*, 755 So.2d 1090, 1094 (Miss. 2000). In *Terry v. State*, 718 So.2d 1097 (Miss. 1998), this Court addressed the issue of whether a person outside of pending litigation subject to a gag order could be held in contempt for publishing an article in the local newspaper denouncing the actions of the district attorney. *Id.* at 1105. In that case, this Court held that the person who had published the article in the newspaper was "erroneously charged . . . with contempt because she was not involved in any aspect of the matter before the court." *Id.*

¶18. In this case, the Attorney General contends that the gag order could not have applied to him because he never made an appearance in the Circuit Court Holmes County. At no time did the Attorney General assist in the prosecution of the case. As is heavily emphasized in the briefs, the Attorney General's only appearance in the circuit court was to answer the defense's show cause motion. At no time was the Attorney General notified about the gag order when he was arguing the petition before the Supreme Court. If Culp was truly concerned about the prejudicial effects of any extrajudicial statements made by the Attorney General, he could have served notice of the gag order on the Attorney General in the five days in between his first remark to the *Clarion-Ledger* on June 3, 2000, and his next comment on June 8, 2000. At no time over the next two months, did defense counsel try to prevent the Attorney General from making more comments to the media concerning the press, but waited eleven days following the first remark to file the first motion to show cause.

¶19. Culp argues that since notice of the order was published in the *Clarion-Ledger* on the day following its issuance, then that is constructive notice of the order to the Attorney General. There are, however, no rules in the U.C.C.C.R. requiring that orders be published following their issuance, and the Attorney General has no duty to know of every order entered in every case in Mississippi. Also, since the Attorney General did not know of the order, then he could not have violated M.R.P.C. 3.6 because he never knew of the possible prejudicial effects of his statements since they were made in regards to the petition before the Supreme Court.

¶20. We hold that in this case, the gag order was applicable only to the district attorney and defense counsel who made appearances in the Holmes County Circuit Court. At no time did the Attorney General subject himself to the jurisdiction of the circuit court in the Culp case. Further, the Attorney General was never put on notice as to the existence of the gag order. Therefore, since the Attorney General never made an appearance in the circuit court and never had notice of the gag order issued to him, he could never have willfully violated the gag order as is required by *Brame*.

¶21. Therefore, the denial of the Attorney General's Motion to Hold That the Gag Order Does Not Apply to the Attorney General is reversed and rendered.

## CONCLUSION

¶22. While it is clear that this issue arises from the capital murder case of *State v. Elliot Culp*, it is equally clear that the Attorney General's comments to the press were in regard to a separate action, *In re: State,* No. 2000-M-00887-SCT, which only concerned Culp's bond. Therefore, the denial of the Attorney General's motion to dismiss the defense motions to show cause is reversed and rendered. Since the Attorney General never made an appearance in the Circuit Court of Holmes County and never received

notice as to the existence of the gag order, the Attorney General could not be held to willfully have violated the gag order. The denial of the motion that the gag order does not apply to the Attorney General is therefore reversed and rendered.

¶23. **REVERSED AND RENDERED.**

**PITTMAN, C.J., McRAE, P.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**