# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-EC-00115-SCT

*HALEY BARBOUR, GOVERNOR OF THE STATE OF MISSISSIPPI*

*v.*

*THE STATE OF MISSISSIPPI EX REL. ATTORNEY GENERAL JIM HOOD*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2008 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HITE COLBY LANE |
| | JOHN C. HENEGAN |
| | MICHAEL B. WALLACE |
| | DONNA BROWN JACOBS |
| | PATRICK RYAN BECKETT |
| | ROBERT M. FREY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: HAROLD EDWARD PIZZETTA, III |
| | RICKY G. LUKE |
| | MEREDITH McCOLLUM ALDRIDGE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND RENDERED.  ON CROSS-APPEAL: AFFIRMED. - 02/06/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     On December 20, 2007, Governor Haley Barbour ("Governor") issued a Writ of Election establishing November 4, 2008 (a date on which a general congressional election is set), as the date for the special senatorial election to fill the vacancy created by United

States Senator Trent Lott's resignation. Thereafter, Attorney General Jim Hood ("Attorney General") filed suit in the Circuit Court of Hinds County, Mississippi, First Judicial District ("circuit court") alleging that the Writ of Election violates the United States Constitution, the Mississippi Constitution, and Mississippi Code Annotated Section 23-15-855. The Attorney General specifically sought a writ of mandamus, prohibition, injunctive relief, and/or a declaratory judgment voiding or nullifying the Writ of Election, and requiring that a special election be held within ninety days of the Governor's proclamation. Following a hearing on January 14, 2008, the circuit court issued a "Memorandum Opinion and Order" which granted judgment against the Governor, opining that the Writ of Election violated the United States and Mississippi Constitutions and the statutory laws of this state, and declaring the Writ of Election was "a nullity, being void *ab initio*." The circuit judge further opined that the Seventeenth Amendment to the United States Constitution and Section 23-15-855 "constitute legislative mandates that . . . [the] Senate vacancy election be held within ninety (90) days of the Governor's December 20, 2007 Proclamation of Writ of Election, i.e., on or before March 19, 2008[.]" From that ruling, the Governor appeals.[1]

**FACTS**

¶2.     On November 26, 2007, Senator Lott publicly announced his intention to retire. Thereafter, State Representative Thomas Reynolds, the Chairman of the Apportionment and Elections Committee, requested an official opinion from the Attorney General on the

---

[1]The Attorney General cross-appeals on portions of the "Memorandum Opinion and Order" which granted the Governor's motion for dismissal, or for judgment on the pleadings, regarding claims for writ of mandamus, prohibition, and other injunctive relief, as well as denial of the Attorney General's motion for preliminary injunctive relief.

appropriate timing of the special election if the senatorial vacancy occurred on or before

December 31, 2007. On December 17, 2007, an Attorney General Opinion was issued,

concluding that:

> Section 23-15-855 (1972)[2] is unambiguous. If the effective date of the resignation is after the 2007 General Election,[3] but before January 1, 2008, the Governor must, within 10 days of receiving notice of the vacancy, issue his proclamation setting the election within 90 days from when the proclamation is issued.

---

[2]Mississippi Code Annotated Section 23-15-855 provides:

(1) If a vacancy shall occur in the office of United States Senator from Mississippi by death, resignation or otherwise, the Governor shall, within ten (10) days after receiving official notice of such vacancy, issue his proclamation for an election to be held in the state to elect a Senator to fill such unexpired term as may remain, provided the unexpired term is more than twelve (12) months and the election shall be held within ninety (90) days from the time the proclamation is issued and the returns of such election shall be certified to the Governor in the manner set out above for regular elections, *unless the vacancy shall occur in a year that there shall be held a general state or congressional election, in which event the Governor's proclamation shall designate the general election day as the time for electing a Senator, and the vacancy shall be filled by appointment as hereinafter provided.*

(2) In case of a vacancy in the office of United States Senator, the Governor may appoint a Senator to fill such vacancy temporarily, and if the United States Senate be in session at the time the vacancy occurs the Governor shall appoint a Senator within ten (10) days after receiving official notice thereof, and the Senator so appointed shall serve until his successor is elected and commissioned as provided for in subsection (1) of this section, provided that such unexpired term as he may be appointed to fill shall be for a longer time than one (1) year, but if for a shorter time than one (1) year he shall serve for the full time of the unexpired term and no special election shall be called by the Governor but his successor shall be elected at the regular election.

Miss. Code Ann. § 23-15-855 (Rev. 2007) (emphasis added).

[3]Although expressed in the present tense, the 2007 general election already had taken place on November 6, 2007.

Miss. Att'y Gen. Op. No. 07- -- (December 17, 2007).

¶3.    On December 20, 2007, official notice of Senator Lott's resignation was received from the Secretary of the United States Senate. That same day, the Governor issued the Writ of Election, setting November 4, 2008, as the date for the special election to fill the senatorial vacancy, as it "occurred in a year in which there shall be a general state or congressional election . . . ."[4] On December 31, 2007, the Governor appointed then-Congressman Roger Wicker to serve as a temporary appointee for the Senate seat.

¶4.    On January 2, 2008, the Attorney General filed a "Complaint for Declaratory Judgment and Other Relief" in the circuit court. According to the Complaint, the Attorney General, "[a]s the chief legal officer of the State, . . . brings this litigation . . . on behalf of the State of Mississippi to protect interests of statewide and critical importance." The Complaint alleged that the Writ of Election issued by the Governor violated Article I, Section 4 of the United States Constitution; the Seventeenth Amendment to the United States Constitution; Article 1, Section 2 of the Mississippi Constitution; Article 4, Section 33 of the Mississippi Constitution; Article 4, Section 103 of the Mississippi Constitution; and Mississippi Code Annotated Section 23-15-855. The Attorney General asserts that the harm to the public is "be[ing] without a popularly elected replacement senator for at least 322 days (10 months and 17 days) . . . ."[5] That same day, the Attorney General also filed a "Motion

_____

[4]Subsequently, a sworn affidavit was executed by then-Secretary of State Eric Clark ("Secretary of State"), commonly recognized as the "chief elections officer for the State of Mississippi[.]" *See* Miss. Code Ann. § 23-15-211.1. The Secretary of State "concur[red] with the Governor's conclusion on this question."

[5]Following this argument to a logical conclusion, are we to presume that Mississippi Code Annotated Section 23-15-855 is unconstitutional? For if a vacancy occurred on

4

for Injunctive, Declaratory, and Other Relief." In that motion, the Attorney General pleaded that:

> the State of Mississippi has met the burdens required for a final declaratory judgment on the merits and for a preliminary and permanent injunction. . . . [T]he Governor's act of calling a special election in November 2008 is in conflict with clear statutory directives, infringes on the authority of the Legislature, and denies voters their state and federally guaranteed rights to a popularly elected senator. The denial of the constitutional and statutory rights to an election in ninety days is irreparable.

¶5. The Governor filed an "Opposition to Attorney General Hood's Motion for Injunctive, Declaratory, and Other Relief," a "Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the alternative, for Judgment on the Pleadings," and an "Answer and Defenses to Complaint for Declaratory Judgment and Other Relief." In these pleadings, the Governor asserted that the Attorney General lacked standing, that the circuit court lacked subject matter jurisdiction, and that the Complaint was without merit. The Governor added that he "acted properly under applicable Federal and state law and is therefore entitled to a judgment on the pleadings[.]"[6]

---

January 1, 2008, no one would argue that the State would be without a popularly elected replacement senator for 309 days (10 months and 4 days), as declared by the legislative act.

[6]In a subsequent "Rebuttal Memorandum in Support of Motion to Dismiss, or, in the alternative, for Judgment on the Pleadings," the Governor additionally argued that:

> as a practical matter, a declaratory judgment would be no less pernicious than injunction or writ of prohibition. Any such order, issued in a case where the only argument is that the Governor did not read a statute the same way that another state officer might read it, would invariably tend to convert the Office of the Governor into a mere wing . . . of the courthouse.

5

¶6.     On January 14, 2008, the circuit court issued its "Memorandum Opinion and Order."

In its "Memorandum Opinion," regarding the issue of whether the Attorney General had

standing to bring the lawsuit, the circuit judge was:

> not persuaded by the Governor's assertions that the Attorney General does not
> have the authority to bring this action. The Mississippi Supreme Court has
> held that the Attorney General has all powers invested in the attorney general
> at common law, in addition to that authority conveyed by statute, [*see Dunn
> Constr. Co. v. Craig*, 2 So. 2d 166, 175 (Miss. 1941)], and under the common
> law the Attorney General has the "right to institute, conduct, and maintain all
> suits necessary for the enforcement of the laws of the state, the preservation of
> order, and protection of public rights." [*Capitol Stages, Inc. v. State ex rel.
> Hewitt*, 157 Miss. 576, 591, 128 So. 759, 763 (1930)]. "Paramount to all his
> duties, of course, is his duty to protect the interests of the general public,"
> [*State v. Culp*, 823 So. 2d 510, 514 (Miss. 2002),] and "[f]ew matters involve
> more public interest than the process of electing a new United States Senator."
> [*State ex rel. Kusler v. Sinner*, 491 N.W.2d 382, 385 (N.D. 1992)].

The circuit judge then opined that "[n]o writ of injunction or mandamus or other judicial

remedial writ will run against the Governor . . . ."[7] As such, the circuit judge concluded that:

> the Attorney General's motion for preliminary injunctive relief should be
> denied. Moreover, the Governor's alternative motions to dismiss or for
> judgment on the pleadings should be granted with respect to those portions of
> the Attorney General's complaint which seeks a writ of mandamus, other
> remedial writs, or injunctive relief of any kind.

The circuit judge further opined that he had "full authority to issue a declaratory judgment

against the chief executive authority."[8] According to the circuit judge, "[i]f a duty is

---

[7]Quoting *State v. McPhall*, 182 Miss. 360, 375, 180 So. 387, 391 (1938). The circuit judge added that "[e]ven if Mississippi case authorities did not bar writs of mandamus and other injunctive relief against the Governor, this Court would nevertheless be disinclined to issue such a writ under the circumstances of this case."

[8]Citing *Fordice v. Thomas*, 649 So. 2d 835, 840 (Miss. 1995).

6

positively imposed upon [the Governor] by constitutional or statutory mandate, and if he fails to carry out that mandate, the Court may so declare his malfeasance."

¶7. The circuit judge then framed the central issue as follows: "[i]t is not the act of the call itself challenged . . . . It is the *timing* of the vacancy election being called that is challenged, and the Governor is duty bound to respect the timing as the Legislature has directed." Applying his version of the "common and ordinary meaning" of terms, the circuit judge then concluded "the meaning of the statute leaps out at the reader[,]" but not before editing the text, by revising the wording of the statute, to read as follows:

> the exception to the ninety (90) day requirement is clearly read to apply only when the vacancy occurs "in a [*calendar*] year that there *will* be held a general state or congressional election, in which event the Governor's proclamation *must* designate the general election day[9] as the time for electing a senator . . . ."

(Emphasis added). The circuit judge then opined "that the provisions of Section 23-15-855(1) are plain, clear, and unambiguous, rendering it inappropriate to look at anything beyond the language of the statute." Finally, the circuit judge opined "that the proclamation or Writ of Election setting the election for a time in derogation of Section 23-15-855 is . . . in contravention of the Seventeenth Amendment. Because of this unconstitutionality, the proclamation or Writ of Election is hereby declared a nullity and void."

¶8. The Order of the circuit court:

> awarded declaratory judgment against the Governor, pursuant to MRCP 57, to wit:

---

[9]The circuit judge opined that, "'the general election day' refers to 'the one that will be held in the same calendar year as the vacancy.'"

(a) That the terms and provisions of the Seventeenth Amendment of the Constitution of the United States and Miss. Code Ann. Section 23-15-855, constitute legislative mandates that, under the undisputed facts of this case, the subject Senate vacancy election be held within ninety (90) days of the Governor's December 20, 2007 Proclamation of Writ of Election, i.e., on or before March 19, 2008;

(b) That portion of the Governor's December 20, 2007 Proclamation or Writ of Election setting the subject Senate vacancy election for November 4, 2008 is in conflict with, and in derogation of, the aforesaid constitutional and statutory provisions;

(c) That the aforesaid provisions of the Governor's aforesaid Proclamation or Writ of Election, regarding the timing of the subject Senate vacancy election exceed his constitutional and statutory authority, infringing upon the constitutional authority of the United States Congress and Mississippi Legislature, and therefore is a nullity, being void *ab initio*.

On January 16, 2008, the Governor filed a "Notice of Appeal." On January 17, 2008, the

Attorney General filed a "Notice of Cross-Appeal," *see* footnote 1 *supra*.

## ISSUES

¶9.     This Court will consider:

(1) Whether the circuit court abused its discretion in refusing to grant a writ of mandamus against the Governor.
(2) Whether the circuit court erred, as a matter of law, in deeming Mississippi Code Annotated Section 23-15-855(1) "plain, clear, and unambiguous," and then finding the Writ of Election exceeded the Governor's constitutional and statutory authority.

Issue (1) is reviewed under an abuse-of-discretion standard. *See* **Chatham v. Johnson**, 195

So. 2d 62, 64 (Miss. 1967). Issue (2) is a question of law reviewed by this Court *de novo*.

*See* **Horace Mann Life Ins. Co. v. Nunaley**, 960 So. 2d 455, 458-59 (Miss. 2007).

8

## ANALYSIS

### I.  Whether the circuit court abused its discretion in refusing to grant a writ of mandamus against the Governor.

¶10.    This Court repeatedly has prohibited issuance of a writ of mandamus against the Governor.  *See Thomas*, 649 So. 2d at 840; *McPhall*, 180 So. at 392 ("[w]ithin the limits of the power conferred upon him by the Constitution and the laws, the Governor is not subject to control by the courts *nor, as already mentioned, can any mandamus, prohibition, or injunction direct or restrain him in the exercise of his power*.") (emphasis added); *Broom v. Henry*, 136 Miss. 132, 148, 100 So. 602, 603 (1924); *Vicksburg and Meridian R.R. Co. v. Lowry*, 61 Miss. 102, 105 (1883).  The reasoning is simple in that "[i]f the governor could not be removed from the performance of the functions of his office by imprisonment to compel compliance with the writ of mandamus, the judgment would be mere advice, and courts do not advise." *Id*. at 104.  The circuit court relied upon the above authorities in denying the Attorney General's motion for preliminary injunctive relief and granting the Governor's motion to dismiss, or for judgment on the pleadings, as to the "portions of the Attorney General's complaint which seeks a writ of mandamus, other remedial writs, or injunctive relief of any kind."  Finding that the circuit court did not abuse its discretion in denying the subject relief requested, this Court finds the Attorney General's cross-appeal is without merit.

**II. Whether the circuit court erred, as a matter of law, in deeming Mississippi Code Annotated Section 23-15-855(1) "plain, clear, and unambiguous," and then finding the Writ of Election exceeded the Governor's constitutional and statutory authority.**

¶11. The circuit court cited the sagacious statement of United States Supreme Court Justice Benjamin Robbins Curtis from his dissenting opinion in the infamous "Dred Scott" case:

> *[p]olitical reasons have not the requisite certainty to afford rules of juridical interpretation*. They are different in different men. They are different in the same men at different times. And when a strict interpretation of the Constitution, according to the fixed rules which govern the interpretation of laws, is abandoned, and the theoretical opinions of individuals are allowed to control its meaning, we have no longer a Constitution; we are under the government of individual men, who for the time being have power to declare what the Constitution is, according to their own views of what it ought to mean.

*Scott v. Sandford*, 60 U.S. 393, 620-21, 15 L. Ed. 691 (1857) (Curtis, J., dissenting) (emphasis added). The courts of this state are ever mindful of the wisdom of our predecessors in exercising caution and exhibiting reluctance to inject themselves in election matters, and seek to exercise diligence in honor of our Constitution's clear mandate regarding separation of powers. Our role is limited to only those cases involving violation of the Constitution and laws. *See Conner v. Gray*, 88 Miss. 489, 492, 41 So. 186, 188 (1906) ("the courts will not interfere in any election where it is not called in violation of the constitution and laws of the state."). Moreover, "[w]ithin the limits of the power conferred upon him by the Constitution and the laws, the Governor is not subject to control by the courts . . . ." *McPhall*, 180 So. at 392. However, no Governor, or for that matter, any governmental official, can exercise power beyond their constitutional authority. *See Fordice v. Bryan*, 651

10

So. 2d 998, 1003 (Miss. 1995) (quoting *State ex rel. Sego v. Kirkpatrick*, 524 P.2d 975 (N.M. 1974)).

¶12.   The Seventeenth Amendment to the United States Constitution provides, in part, that:

> [w]hen *vacancies* happen in the representation of any State in the Senate, *the executive authority of such State shall issue writs of election to fill such vacancies*: *Provided*, That *the legislature* of any State *may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.*

U.S. Const. amend. XVII (emphasis added).  *See also* Miss. Const. art. 4, § 103 ("[i]n all cases, not otherwise provided for in this constitution, the Legislature may determine the mode of filling all vacancies, in all offices, and in cases of emergency provisional appointments may be made by the Governor, to continue until the vacancy is regularly filled . . . .").  Thus, the Seventeenth Amendment grants general power to the Governor to issue the writ of election and grants a specific power[10] to direct filling of the vacancy by election to the Legislature.   In response, the Mississippi Legislature adopted Mississippi Code Annotated Section 23-15-855 (*see* footnote 2 *supra*) for direction to fill vacancies in the office of United States Senator.  We discern no breach of the general powers granted by the United States Constitution.

¶13.   Having determined the aforementioned, final resolution of Issue (2) requires a statutory analysis of Section 23-15-855, and whether the Governor acted in contravention of the statute in a constitutionally impermissible manner.  This Court:

> "neither broaden[s] nor restrict[s] the legislative act." ***Miss. Dep't of Transp. v. Allred***, 928 So. 2d 152, 156 (Miss. 2006).  In ***Green v. Cleary Water, Sewer***

---

[10]Via the "Provided" language.  *See* U.S. Const. amend. XVII.

***& Fire Dist.***, 910 So. 2d 1022, 1027 (Miss. 2005), this Court held that "courts cannot restrict or enlarge the meaning of an unambiguous statute." ***Green***, 910 So. 2d at 1027 (quoting ***Marx v. Broom***, 632 So. 2d 1315, 1318 (Miss. 1994)). In ***Allred***, 928 So. 2d at 154, this Court held:

> In considering a statute passed by the Legislature, . . . the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. [Citations omitted]. Whether the statute is ambiguous or not, the ultimate goal is to discern and give effect to the legislative intent.

> ***Allred***, 928 So. 2d at 154 (quoting ***City of Natchez v. Sullivan***, 612 So. 2d 1087, 1089 (Miss. 1992)). Therefore, when a statute is not ambiguous, this Court applies the statute according to its plain meaning and need not apply principles of statutory construction. ***Id***.

***Mississippi Ins. Guar. Ass'n v. Cole***, 954 So. 2d 407, 412-13 (Miss. 2007).

¶14.     "The powers of the governments of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another." Miss. Const. art. 1, § 1. "No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others." Miss. Const. art. 1, § 2. "Article V of the [Mississippi] Constitution vests in the executive department the whole of the executive power. The chief executive power is vested in the Governor." ***Alexander v. State by and through Allain***, 441 So. 2d 1329, 1344 (Miss. 1983). "Execution is at the core of executive power." ***Id***. at 1338. Mississippi Code Annotated Section 7-1-5 provides that the Governor's duties include "see[ing] that the laws are faithfully executed" and "mak[ing] appointments and fill[ing] vacancies as prescribed by law." Miss. Code Ann. § 7-1-5(c) and (f) (Rev. 2002).

12

¶15.   If the legislative mandate in Section 23-15-855 is ambiguous or silent, then this Court must determine whether the Governor's construction of the statute is permissible. According to the United States Supreme Court:

> [i]f . . . the court determines Congress has not directly **addressed the precise question at issue**, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is **silent or ambiguous with respect to the specific issue**, the question for the court is whether the agency's answer is based on a *permissible construction of the statute*.

***Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.***, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694, 702 (1984) (emphasis added). ***Chevron*** adds that "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is *entrusted to administer* . . . ." ***Id***. at 844 (emphasis added). This is consistent with our treatment of the Legislature.[11]

¶16.   If we deemed the legislative mandate in Section 23-15-855 to be unambiguous, then the Governor's "duty [thereunder] is ministerial and not discretionary" as "it is imposed by law and its performance is not dependent on [his] judgment." ***Miss. Dept. of Mental Health v. Hall***, 936 So. 2d 917, 924-25 (Miss. 2006) (Mississippi Tort Claims Act case).

¶17.   All can agree that a vacancy occurred in the office of United States Senator in 2007, with an unexpired term of more than twelve months, and that the Governor issued the Writ

---

[11]This Court has granted deference to the Legislature in the "interpretation and application of its procedural rules and . . . internal operations." ***Tuck v. Blackmon***, 798 So. 2d 402, 405 (Miss. 2001). *See also* ***Dye v. State ex rel. Hale***, 507 So. 2d 332, 345 (Miss. 1987) ("[w]hile this Court certainly has the authority to declare Senate rules unconstitutional, the Court should not do so unless those rules are 'manifestly' beyond the Senate's constitutional authority.").

13

of Election within ten days after receiving Official Notice thereof. Furthermore, all can agree that the vacancy occurred in a year in which a general state election was held.[12] The dispute is limited to the date for the special senatorial election. Without revision of the relevant text of Section 23-15-855(1), it reads:

> provided the unexpired term is more than twelve (12) months . . . the election shall be held within ninety (90) days from the time the proclamation is issued . . . , *unless* the vacancy *shall occur* in *a year* that there *shall be held a general state or congressional election*, in which event the Governor's proclamation shall designate *the general election day* as the time for electing a Senator, and the vacancy shall be filled by appointment as hereinafter provided.

Miss. Code Ann. § 23-15-855(1) (Rev. 2007) (emphasis added). The Governor contends this provision is ambiguous, whereas the Attorney General maintains the opposite.

¶18.   Given the timing of Senator Lott's resignation in the case *sub judice*, this Court finds that the legislative directive in Section 23-15-855 is ambiguous when applied to the specific facts of this case, or more clearly stated, "is silent . . . with respect to the specific issue," *Chevron*, 467 U.S. at 843, i.e., when a Senator resigns in the same year as a general state or congressional election after the general election is held that year. Of course, this void is unquestionably within the Legislature's province to amend, should it be so inclined. *See Miss. Ethics Comm'n. v. Grisham*, 957 So. 2d 997, 1003 (Miss. 2007) ("[t]he power to change this result lies with the legislature to amend the statute.").

¶19.   Mississippi Code Annotated Section 1-3-63 defines the term "year" as "a calendar year, unless a contrary intention be expressed." However, this Court is not persuaded that

---

[12]Within the election cycle of 2007-2010, 2009 is the only year in which no general state or congressional election would be held.

the general definition of "year" is applicable, as "a contrary intention" is expressed in the use of the term "year" in Section 23-15-855(2). Specifically, in subsection (2), *see* footnote 2 *supra*, the term "year" within the phrase "one (1) year," plainly does not refer to one "calendar year." *See* Miss. Code Ann. § 23-15-855(2) (Rev. 2007). This Court previously has stated that:

> the rule is that "where the same word or phrase is used in different parts of a statute, *it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear this meaning will be attached to it elsewhere, unless it clearly appears from the whole statute that it was the intention of the legislature to use it in different senses*."

*Millsaps College v. City of Jackson*, 136 Miss. 795, 805, 101 So. 574, 575 (1924) (quoting 36 Cyc. 1132) (emphasis added). The meaning of the term "year" as a 365-day year[13] in subsection (2) is clear, therefore, this meaning will be attached to it throughout the statute "unless it clearly appears from the whole statute that it was the intention of the legislature to use it in different senses." *Millsaps College*, 101 So. at 575. We find no such contrary intention to be clearly apparent.[14] Therefore, this Court cannot conclude that the Governor's

---

[13]366 days in "leap years."

[14]Accepting the argument that "year" always means "calendar year," unless specifically stated otherwise would require a review of every criminal sentence in this state. Does a twenty year sentence mean nineteen years and one month if imposed in December, nineteen years and two months if imposed in November, etc.? Extending that argument, does a one year sentence imposed on December 31, 2007, expire on January 1, 2008, the beginning of a new calendar year?

15

"365-day" construction of the statute, although diametrically opposed to the Attorney General's, is impermissible. *See **Chevron***, 467 U.S. at 842.[15]

¶20. Section 23-15-855(1) contains a clause stating "unless the vacancy shall occur in a year that there shall be held a general state or congressional election[.]" Miss. Code Ann. § 23-15-855(1) (Rev. 2007). This clause adequately addresses scenarios in which a vacancy occurs prior to a general state or congressional election. However, as in the case *sub judice*, i.e., a vacancy occurring *after* a general state or congressional election, the statute is silent, and thus fails to implement the specific power granted to the Legislature by the Seventeenth Amendment for directing the filling of the vacancy by election. As such, the general power granted to the executive branch of the State by the Seventeenth Amendment to issue writs of election is controlling.

¶21. As portions of Section 23-15-855 are ambiguous, and others silent, this Court finds the Writ of Election which designated November 4, 2008, as the general election day for electing a Senator to complete the term of office is not constitutionally infirm. Moreover, both the temporary appointment and the Writ of Election effectuate the clear intent of the Legislature that no senatorial temporary appointment exceed one year (*see* Miss. Code Ann. § 23-15-855(2)) and an election will be held on the date of a general congressional election, less than one year after Senator Wicker's temporary appointment. Therefore, this Court concludes that the circuit court erred in deeming Section 23-15-855(1) "plain, clear, and

---

[15]The arguments that the phrase "shall be" has "a plain meaning that is forward looking[,]" and that the phrase "the general election day" makes "obvious reference to the 'general state or congressional election' occurring in the year of the vacancy[,]" are mooted by the aforementioned statutory analysis.

16

unambiguous," and entering a declaratory judgment finding the Writ of Election exceeded the Governor's "constitutional and statutory authority."

¶22.    Likewise, we are unpersuaded by the dissent's suggestions otherwise.  The dissent first unleashes a virulent extrajudicial attack not only upon the individual justices who join this opinion, but upon the Court as an institution, followed by a charge that all who disagree with the dissent's interpretation of the law lack the power to reason or exercise common sense.  This charge reminds one of the proverbial "young man in the parade," who alone marches out of step only to have his mother insist that all other marchers are, in fact, out of step with him.

¶23.    As stated in *Chevron*:

> judges – who have no constituency – have a duty to respect legitimate policy choices made by those who do.  The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches."

*Chevron*, 467 U.S. at 866 (quoting *TVA v. Hill*, 437 U.S. 153, 195 (1978)).  Judges:

> are not part of either political branch of the Government.  Courts must, in some cases, reconcile competing political interests, but not on the basis of the judges' personal policy preferences. . . .  While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the Government to make such policy choices – resolving the competing interests which Congress[16] itself either . . . did not resolve, or intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities.

*Chevron*, 467 U.S. at 865-66.

---

[16]In our case, the Legislature.

17

## CONCLUSION

¶24.   Accordingly, we affirm as to the denial of the Attorney General's motion for preliminary injunctive relief and the granting of the Governor's motion to dismiss, or for judgment on the pleadings, as to the Attorney General's request for "a writ of mandamus, other remedial writs, or injunctive relief of any kind[;]" and we reverse and render as to the declaratory judgment entered against the Governor.  This Court concludes that the December 20, 2007, Writ of Election is constitutionally and statutorily valid.

¶25.   **ON DIRECT APPEAL:  REVERSED AND RENDERED.  ON CROSS-APPEAL: AFFIRMED.**

   **SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ.  EASLEY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION.  GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DIAZ, P.J.**

   **DICKINSON, JUSTICE, CONCURRING:**

¶26.   Although I agree with the majority, I find this case much less complicated, and I would add a step in the analysis of the question presented.

¶27.   The majority correctly finds that the Seventeenth Amendment[17] grants authority to the Executive branch to set the date and timing of the election, except as may be provided by the Legislature.  If the Legislature has not enacted legislation addressing the issue, we are

---

[17]For brevity's sake, I adopt the majority's analysis of the Seventeenth Amendment.

18

required to return to the Seventeenth Amendment. If, however, the Legislature has enacted legislation, we must apply that legislation [18] according to its terms.[19]

¶28.   In interpreting the statute, we must first address the provision and circumstances which would require an election "within ninety (90) days from the time the [Governor's] proclamation is issued . . . ." The Statute states that the ninety-day provision applies "unless the vacancy shall occur in a year that there shall[20] be held a general, state, or congressional election . . . ." Since the vacancy did, in fact, occur in the same year as "a general, state, or congressional election," the ninety-day provision has no application, requiring us to turn to the remainder of the statute. In doing so, this Court's duty is clear. If the remainder of the statute clearly and unambiguously does not address our current circumstances, we return to the Seventeenth Amendment. If the remainder of the statute clearly and unambiguously does provide for our current circumstances, we apply the clear meaning of the statute. But if the remainder of the statute is ambiguous, that is, capable of more than one reasonable interpretation, and this Court has not previously addressed the question, we must defer to the power exercised by the Executive branch, so long as that exercise of power is based upon a

---

[18]The legislation to which I refer is Section 23-15-855 of the Mississippi Code (the "Statute").

[19]Much has been said in the trial court and briefing before this Court about public policy and the economics of when the election should be held. Our constitutional duty, however, is to apply the law, and leave matters of public policy to the other branches. *See Chevron,* 476 U.S. at 865-66.

[20]The terms "shall occur" (referring to the vacancy), and "shall be held" (referring to the general, state or congressional election) are confined to, and must occur within, a twelve-month year. The terms cannot logically refer only to future events because the statute must be applied to resignations which have already occurred. Thus, in my view, the statute requires that both events must occur within the same year.

19

"permissible construction of the statute." ***Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.***, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694, 702 (1984).

¶29.    In the case before us today, the Statute clearly provides that an election must be set, but is ambiguous as to when the election must be set.  Governor Barbour's decision to set the election for the same date as the 2008 general election is a "permissible construction of the statute."   His decision violates neither the Seventeenth Amendment nor any other constitutional provision or statute.  Thus, it must be honored.

    **SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., JOIN THIS OPINION.**

    **EASLEY, JUSTICE, SPECIALLY CONCURRING:**

¶30.    I concur with the majority opinion.  However, I write separately to specially concur with the opinion for several reasons.  I see no reason to have a special election in March, because it would place an undue financial burden on the taxpayers of Mississippi.  The cost of elections to the State and counties is an enormous financial expenditure in terms of organizational and set-up costs and efforts on the part of personnel.  Furthermore, an expedited special election is not fair to the voters or the candidates.  Mississippians deserve better.  We deserve the opportunity and time to get to know the candidates and their positions on issues before electing a United States Senator to fill this vacancy for the next four years. This year is our nation's Presidential Election.  Therefore, Mississippi already is preparing itself for the November Presidential Election, which is taking place in a few months. Economically, a special election is unjustifiable in this election year. Reason and economy must prevail.

¶31.   For these reasons, I concur with the majority opinion and specially concur for the reasons stated.

**GRAVES, JUSTICE, DISSENTING:**

¶32.   Much of what has been written by the majority in the instant case would be dismissed as mere gobbledygook but for the fact that it is being promulgated by a venerable institution in our democracy, the Mississippi Supreme Court.  This majority decision erodes that veneration.  Contrary to the majority's misapprehension, which defies reason and common sense, Section 23-15-855 of the Mississippi Code is unambiguous and should be construed as written.  Because I would affirm the trial court, I respectfully dissent.

### I. Whether the circuit court abused its discretion in refusing to grant a writ of mandamus against the Governor.

¶33.   There is authority to support a court's power to issue a writ of mandamus against a Governor.  *See **Marbury v. Madison***, 5 U.S. 137, 2 L. Ed. 60 (1803).  *See also **State ex rel. Kusler v. Sinner***, 491 N.W.2d 382 (N.D. 1992).  Further, I am compelled to discuss the majority's flawed analysis on this issue.  The majority states that "[t]his Court has repeatedly prohibited issuance of a writ of mandamus against the Governor" and cites various cases for this proposition.  The majority then finds that the circuit court did not abuse its discretion in denying the relief.  The majority's analysis  is contradictory.  If a trial court is prohibited, unequivocally, from issuing a writ of mandamus against a Governor, then the decision to grant or deny a writ could not be a matter of discretion with the trial judge.  As stated previously, a trial court is not prohibited from issuing a writ of mandamus against the Governor.  However, I agree with the trial court that the declaratory relief discussed herein

21

is an adequate remedy in this case. Therefore, I would find that the circuit court did not abuse its discretion in denying the Attorney General's request for issuance of a writ of mandamus.

**II. Whether the circuit court erred, as a matter of law, in deeming Mississippi Code Annotated Section 23-15-855(1) "plain, clear, and unambiguous," and then finding the Writ of Election exceeded the Governor's constitutional and statutory authority.**

¶34.    The majority gives a recitation of the issues and the applicable provisions of the United States and Mississippi Constitutions and then merely makes the conclusory statement that "[w]e discern no breach of the general powers granted by the United States Constitution." The majority's finding is totally devoid of any analysis or authority.

¶35.    The majority's recitation of the applicable provision of the Seventeenth Amendment of the United States Constitution is correct. However, to reiterate, the Seventeenth Amendment *only* gives the executive, i.e., the Governor, the authority to "issue writs of election." The Seventeenth Amendment further provides that the Legislature may give the Governor the power to make temporary appointments "until the people fill the vacancies by election as the legislature may direct." The Seventeenth Amendment does not give the Governor any authority to direct elections to fill vacancies; such power rests solely with the Legislature.[21]    Moreover, this language is reiterated in Article 4, section 103 of the Mississippi Constitution, which further provides, "the Legislature may determine the mode of filling all vacancies."

---

[21] "The Seventeenth Amendment accords to the state legislatures discretion to provide for the timing of the election in which a vacancy in the Senate is filled." *Philips v. Rockefeller*, 321 F. Supp. 516, 522 (S.D.N.Y. 1970).

¶36. The Mississippi Legislature has determined the mode of filling all vacancies in the office of United States Senator. Section 23-15-855 of the Mississippi Code provides, in relevant part:

> (1) If a vacancy shall occur in the office of United States Senator from Mississippi by death, resignation or otherwise, the Governor shall, within ten (10) days after receiving official notice of such vacancy, issue his proclamation for an election to be held in the state to elect a Senator to fill such unexpired term as may remain, provided the unexpired term is more than twelve (12) months and **the election shall be held within ninety (90) days** from the time the proclamation is issued and the returns of such election shall be certified to the Governor in the manner set out above for regular elections, **unless** the vacancy shall occur in a **year** that there **shall be held** a general state or congressional election, in which event the Governor's proclamation shall designate the general election day as the time for electing a Senator, and the vacancy shall be filled by appointment as hereinafter provided.

Miss. Code Ann. §23-15-855(1) (Rev. 2007). (Emphasis added).

¶37. Section 1-3-63 of the Mississippi Code provides: "The term 'year,'when used in any statute, means a calendar year, unless a contrary intention be expressed." Miss. Code Ann. §1-3-63 (Rev. 2005). Moreover, Section 1-3-65 states: "All words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning. . . ." Miss. Code Ann. §1-3-65 (Rev. 2005).[22] The majority apparently takes issue with the trial court for applying the common and ordinary meaning of words and for determining "year" to mean calendar year, both as specifically required by the statutes cited herein. Further, the majority abandons its recent trend to "apply a strict standard of statutory construction"[23] by

---

[22] *Balouch v. State*, 938 So. 2d 253, 259 (Miss. 2006) ("This Court must presume the words in the statute were 'intended to convey their usual meaning absent some indication to the contrary.'")

[23] *See* *Caves v. Yarbrough*, 2007 Miss. LEXIS 613, *14 (Miss. 2007). *See also Gannett River States Publ. Co. v. Entergy Miss., Inc.,* 940 So. 2d 221, 224-26 (Miss. 2006);

determining that none of the statutes cited above actually mean what they say. Specifically, and as discussed more fully herein, the majority finds that "shall be held" does not refer to something that is going to happen in the future and that "year" does not mean calendar year.

¶38.   Section 23-15-855(1) plainly, clearly, and unambiguously states that an election to fill a vacancy in the office of U.S. Senator must be held within ninety days of the Governor's proclamation. The only exception to this is if the vacancy occurs in a "**year** that there **shall be held** a general state or congressional election, in which event the Governor's proclamation shall designate the general election day as the time for electing a Senator. . . ." Miss. Code Ann. §23-15-855(1) (Rev. 2007). The Governor received official notice of the vacancy on December 20, 2007, and issued the Writ of Election on that same day. Therefore, the vacancy clearly occurred on December 20, 2007. Such date absolutely supports the majority's statement that "all can agree that the vacancy occurred in a year in which a general state election **was** held." (Emphasis added). Unfortunately, this fact lends no authority to the issue at hand because, for the purposes of Section 23-15-855, it matters not whether an election **was** held during 2007. What matters is only whether a general state or congressional election "**shall**[24] **be held**" in 2007. As the general election already had occurred for 2007 at the time of the vacancy, the vacancy did not "occur in a **year** that there **shall be held** a

---

*Arceo v. Tolliver*, 949 So. 2d 691, 694 (Miss. 2006); *Pitalo v. GPCHP-GP, Inc.,* 933 So. 2d 927, 929 (Miss. 2006); *Walker v. Whitfield Nursing Ctr., Inc.*, 931 So. 2d 583, 590-91 (Miss. 2006); and *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 820 (Miss. 2006).

[24]The American Heritage Dictionary defines "shall," in relevant part as, "[u]sed before a verb in the infinitive to show: **a**. Something that will take place or exist in the future. . . ." The American Heritage Dictionary of the English Language 1598 (4th ed. 2000).

24

general state or congressional election." Therefore, Section 23-15-855(1) requires that the election be held within ninety days of the Governor's proclamation. Since the Governor's proclamation was issued on December 20, 2007, the time for an election would be no later than March 19, 2008.

¶39. To overcome the ninety-day default requirement, the majority next finds that the term "year" in Section 23-15-855(1) does not mean calendar year, but rather, means 365 days. The majority's analysis on this issue is little more than judicial gobbledygook. As stated herein, Section 1-3-63 specifically says that the term "year" means a calendar year "unless a contrary intention be expressed." The intended meaning is plainly evident, not only by the specific language contained in Section 1-3-63, but also by the fact that elections are classified, scheduled, and maintained according to calendar years. Further, Section 23-15-855(1) also includes the language "provided the unexpired term is more than twelve (12) months. . . ." Clearly, if the Legislature had intended a year to mean 365 days, such phrase would have been included in the statute, just as "twelve months" was specifically included. Notwithstanding the plain meaning and statutory definition, common sense also dictates that, as used here, "year" must be interpreted to mean calendar year. Under the majority's skewed interpretation, there is a possibility of a 365-day period including two general state or congressional elections. Surely the majority is not suggesting that, in that event, the Governor could then rely on the exception, rather than the ninety-day rule, and choose whichever election date he preferred.

¶40. Further, the majority finds both that Section 23-15-855(2) contains a "contrary intention" of "year" and that "no such contrary intention [is] clearly apparent."

25

Notwithstanding the majority's apparent confusion regarding subsection (2) of 23-15-855, it is consistent with subsection (1). Section 23-15-855(2) states, in relevant part: "provided that such unexpired terms as he may be appointed to fill shall be for a longer time than one (1) year, but if for a shorter time than one (1) year. . . ." This language is completely consistent with the twelve-months language in subsection (1) and in no way contradicts the fact that "year" as used in subsection (1) clearly pertains to a calendar year. Ironically, the majority relies on the calendar-year definition of "year" as used in subsection (1) to point out that 2009 is the only (calendar) year from 2007-2010 in which no general state or congressional election will be held[25] and to establish that "the vacancy occurred in [2007] a [calendar] year in which a general state election was held." This judicial legerdemain is required in order to reach a result which is so obviously contrary to what the Legislature intended.

¶41. The majority finds that Section 23-15-855 is both ambiguous and silent as to the issue of "when a Senator resigns in the same year as a general state or congressional election after the general election is held that year." The plain language of the statute clearly delineates what is to happen when a Senator resigns in a year where the resignation is preceded by a general election. It prescribes that the election must occur within ninety days. However, as noted by the trial court, disagreement with or dislike of the outcome required by the plain language of a statute is not a basis for finding that the statute is ambiguous or silent.[26]

---

[25]*See* footnote 12, majority opinion.

[26]*See* *Farmland Mut. Ins. Co. v. Scruggs*, 886 So. 2d 714, 718 (Miss. 2004) ("Simply because the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law."). *See also* *Balouch v. State*, 938 So. 2d 253, 260

¶42. For the reasons stated herein and based on the plain reading of the statute[27], I would find that Section 23-15-855(1) of the Mississippi Code is unambiguous and that this Court must "apply the statute according to its plain meaning and should not use principles of statutory construction." *See Miss. DOT v. Allred*, 928 So. 2d 152, 154 (Miss. 2006) (quoting *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). Despite the fact that this Court has previously said that "[w]hether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent,"[28] the majority finds that the statute is both ambiguous and silent and that, as a result, this Court must defer to the Governor. Such a finding is erroneous and is unsupported by any authority or precedent.

¶43. None of the cases cited by the majority support such a finding. Specifically, the majority cites *Chevron U.S.A. Inc. v. NRDC* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L. Ed. 2d 694 (1984). However, *Chevron* pertains only to "an agency's construction of the statute which it administers. . . ." *Id.* at 842. "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)).

_____

(Miss. 2006) ("The courts have neither the authority to write into the statute something which the legislators did not write therein, nor to ingraft upon it any exception not included by them.")

[27]I note that the plain reading of the statute is consistent with the provisions of Section 23-15-853, which provides that a special election for Congress must be held within sixty days.

[28]*Id.*

¶44.    The Governor, as the chief executive of Mississippi, is not an agency.  Section 25-43-3 of the Mississippi Code provides:  "'Agency' means each state board, commission, department or officer, other than the Legislature, the Governor and the courts, authorized by law to make rules or to determine contested cases."  Miss. Code Ann. §25-43-3(a) (Rev. 2006).  Moreover, the office of the Governor does not exist to decide when elections are held; that power rests with the Legislature.  Nor is the Governor responsible for formulating policy or rules to fill any gap in the applicable statutes.  Further, the majority quotes a small portion of *Chevron*, but neglects to include the remainder of the paragraph, which establishes the basis for the Court's holding.  The U.S. Supreme Court said:

> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations "has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation **has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations**. [Citations omitted]."

*Id*. at 844.  (Emphasis added).  Clearly the Governor does not possess any specialized knowledge of elections for United States Senator.  Nor is such election subject to the Governor's "agency regulations."

¶45.    The U.S. Supreme Court later limited *Chevron* deference even further, holding that:

> [A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.

*U.S. v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001).

¶46. Additionally, in *Mead*, the U.S. Supreme Court opined: "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertise, and to the persuasiveness of the agency's position. . . ." *Id.*, 533 U.S. at 228 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140, 65 S.Ct. 161, 89 L. Ed. 124 (1944)). In *Skidmore*, the U.S. Supreme Court found that "the Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." *Id.* at 139. There is a profound difference between deferring to an agency with specialized knowledge and experience and an institutional history of dealing with issues the statute seeks to address and deferring to a Governor who is interpreting various statutes and constitutional provisions. There is no evidence that the Governor's interpretation of the election statute is "based on more specialized experience and broader investigations and information than is likely to come to a judge." Further, there is nothing in any of the aforementioned U.S. Supreme Court precedent that is in any way analogous to the instant case. Moreover, the majority fails to provide a single authority which supports a finding of giving deference to the Governor.

¶47. For the reasons stated herein, I would affirm the judgment of the trial court. Therefore, I respectfully dissent.

**DIAZ, P.J., JOINS THIS OPINION IN PART**.

29